**The PEOPLE of the State of Colorado, Petitioner,**

v.

**Phillip S. GAFFNEY, Respondent.**

No. 87SC404.

Supreme Court of Colorado,
En Banc.

Feb. 21, 1989.

As Modified on Denial of Rehearing
March 13, 1989.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cynthia D. Jones, Asst. Atty. Gen., Denver, for petitioner.

David Hofer, Lakewood, for respondent.

QUINN, Chief Justice.

We granted certiorari to review the unpublished decision of the court of appeals in *Gaffney v. People*, No. 86CA0441 (Sept. 10, 1987), which reversed the conviction of the defendant, Phillip S. Gaffney, for sexual crimes and remanded the case for a new trial. The court of appeals ruled that a pediatrician's statement that the medical history given by the child-victim was "very believable" constituted impermissible opinion testimony on the victim's character for truthfulness in violation of CRE 608(a). We conclude that because the pediatrician's statement could have been interpreted by a jury as an expert opinion on the truthfulness of the child's identification of the defendant as his assailant, the statement should not have been allowed into evidence. We are satisfied, however, that when the challenged statement is viewed in light of the entire record, the error in admitting the statement must be deemed harmless. We accordingly reverse the judgment of the court of appeals and remand the case to that court with directions to consider the defendant's other claims raised in his appeal to that court but not addressed in the court of appeals' opinion.

I.

The defendant was charged with first degree sexual assault,[1] sexual assault on a child,[2] and the commission of a crime of violence,[3] all of which were alleged to have occurred on August 16, 1984, in Denver, Colorado. The defendant entered a not guilty plea to the charges, and the case was set for a trial to a jury.

Prior to trial the district court conducted a hearing, pursuant to section 13–25–129, 6A C.R.S. (1987), on the admissibility of certain hearsay statements made by the child-victim, a twelve year old boy, to his mother, to an investigating police officer, and to an examining pediatrician. As pertinent here, section 13–25–129(1)(a) provides that a child's out-of-court statement, not otherwise admissible by statute or rule, describing any act of sexual penetration performed on the child is admissible in evidence in a criminal proceeding if the court determines that: (a) the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and (b) the child either testifies at the proceedings or, if unavailable as a witness, there is corroborative evidence as to the act which is the subject of the child's statement. In the event the statement is ruled admissible, section 13–25–129(2) requires the court to instruct the jury that it is the jury's prerogative to determine the weight and credit to be given the statement and that, in making this determination, the jury should consider the age and maturity of the child, the nature of the statement, the circumstances under which the statement was made, and any other relevant factor. § 13–25–129(2), 6A C.R.S. (1987). The district court determined that the statutory safeguards had been met and that the three witnesses would be permitted to testify at trial to the child's out-of-court statements.

At trial the prosecution called as its first witness the child-victim, whom we will refer to as W.H. He testified that on the day of the assault the defendant, who was apparently married to but separated from a neighbor of W.H., had made arrangements with W.H.'s mother to take W.H. to an apartment complex to assist in the cleaning of some carpets. The defendant picked up W.H. at his home and then drove to the apartment complex. The apartment manager, however, was not at the complex, so the defendant drove to his own apartment and then took W.H. home. At approxi-

---

**1.** § 18–3–402(1)(a), 8B C.R.S. (1986).

**2.** § 18–3–405(1), 8B C.R.S. (1986).

**3.** § 16–11–309, 8A C.R.S. (1986).

mately three-thirty in the afternoon W.H.'s mother told him to go over to the defendant's apartment, which was approximately one block distant from W.H.'s home, to assist the defendant in the carpet cleaning job. Upon arrival the defendant told W.H. that they could not immediately start working at the apartment complex, so W.H. turned on the television. Approximately thirty minutes later the defendant placed a knife to W.H.'s throat and threatened to kill him if he screamed. After W.H. complied with the defendant's instructions to undress and bathe, the defendant entered the bathroom and carried W.H. to the living room couch where the defendant began rubbing W.H.'s penis. The defendant then carried W.H. to the bedroom, tied his hands together, covered his head with a bathrobe, and performed anal intercourse on him. W.H. testified that the defendant performed at least two other similar acts before permitting W.H. to leave the apartment. Since he was afraid of the defendant, W.H. did not tell anyone of the assaults until October 31, 1984, when he told his mother.

W.H.'s mother testified to the statement made to her by W.H. on October 31, 1984. Before receiving into evidence the mother's testimony, the trial court cautioned the jury that it was their prerogative to determine what weight and credit to give to the statement and that in making that determination the jury should consider the age and maturity of the child, the nature of the statement, the circumstances under which it was made, and any other relevant factor. The mother testified that W.H. told her that on the day he went with the defendant to help in the cleaning of carpets, the defendant had threatened him with a knife and had sexually assaulted him. W.H. described to his mother the manner in which the assault took place and told her that "it was painful, like [I] had to go to the bathroom." [4]

The prosecution also elicited testimony from Denver Police Officer Romas Freeman, who interviewed W.H. on November 14, 1984. Prior to receiving the officer's testimony about W.H.'s statement, the court gave the same cautionary instruction to the jury as previously given when W.H.'s mother testified. The officer testified that W.H. identified the defendant by name as the man who had assaulted him and then described in detail the circumstances of the assault.

Dr. Sara Evans, a pediatrician who examined W.H. at Denver General Hospital on November 5, 1984, also testified as a prosecution witness. After the court repeated the cautionary instruction previously given the jury, Dr. Evans recounted the medical history given to her by W.H. The doctor testified that W.H. told her that "Phillip Gaffney" was the man who had assaulted him. W.H. also told Dr. Evans that he experienced considerable pain during the acts of anal intercourse and that he had to use the bathroom three times for very painful bowel movements during the criminal episode. Dr. Evans described her findings on examining W.H. These findings included an enlarged raphe, which the doctor described as the thin line between the scrotum and the anal opening, and a slightly lax sphincter, which is a muscle surrounding the anus. Both of these conditions, in the doctor's opinion, were unusual for a twelve year old child and were consistent with repeated acts of forcible sexual penetration of the anus. Based on the medical history and physical examination, it was the doctor's opinion that W.H. had been subjected to forcible anal intercourse.

During Dr. Evans' direct examination, the prosecuting attorney asked, "What was particularly compelling about the history as told to you?" The doctor replied, "This history is very believable." Although the defense attorney objected to the doctor's response, the trial court overruled the objection and refused to hear any argument.

4. W.H.'s mother testified that she did not inform the police of the assault because W.H. told her that the defendant had threatened to kill him if the incident was reported and also because she did not want the Department of Social Services to become involved with her family. The police became aware of the sexual assault against W.H. when he told his friend about it and the friend's mother then reported the incident to the police.

Dr. Evans went on to testify that what she found compelling about W.H.'s history was its physiological consistency, in that anal stimulation "will cause a reflection to defecate and that is the thing that was most physiologically consistent, as well as the fact of [W.H.] describing the pain going along with the situation." [5]

The defense presented testimony from Michelle Mills and the defendant. Ms. Mills testified that on August 16, 1984, the date of the alleged offenses, she was with the defendant from 9:00 a.m. in the morning until approximately 2:00 a.m. the next morning. Both she and the defendant went shopping, returned to her apartment where they had dinner with Michelle's husband, and then the three of them went to several bars. It was Ms. Mills' testimony that after the bars closed at 2:00 a.m., she walked the defendant to his home. The defendant denied committing the offenses and testified basically to the same events previously described by Ms. Mills.

The jury returned guilty verdicts to all counts, and the court sentenced the defendant to concurrent terms totalling twenty-four years. In reversing the judgment, the court of appeals reasoned that the admission of the pediatrician's opinion concerning the believability of W.H.'s history was in violation of CRE 608(a) because W.H.'s character for truthfulness had not been attacked and, in addition, the pediatrician's

5. Dr. Evans' statement about W.H.'s history being "very believable" occurred in the course of the following direct examination by the prosecuting attorney:

Q [BY DEPUTY DISTRICT ATTORNEY]: Doctor, did you form an opinion based on the medical history and physical examination and the result of those examinations, if they were consistent with a sexual assault occurring as he told you?
A Yes, I did.
Q What was your opinion?
A That the child had been raped.
[DEFENSE ATTORNEY]: Your Honor, I object.
THE COURT: Well, that really was not the question, Doctor. He asked you if your findings were consistent as to the sexual assault?
THE WITNESS: The findings were consistent with the history the child had given me.
Q [BY DEPUTY DISTRICT ATTORNEY]: And that history was that he had been sexually assaulted?
A That's right.
Q Let's talk about your opinion for the consistency. First of all, why do you take a medical history?
A We always take a medical history, because the history is just as important as the findings oftentimes. It is important as to how long a child has been sick or how he got into it.
Q What was particularly compelling about the history as told to you?
A This history is very believable.
[DEFENSE ATTORNEY]: Objection.
THE COURT: Objection is overruled, go ahead.
[DEFENSE ATTORNEY]: I can cite some case law, Your Honor.
THE COURT: I don't care, objection is overruled.

Q [BY DEPUTY DISTRICT ATTORNEY]: What was compelling about the history?
A The detail with which he gave the history and the degree to which the history is physiologically consistent.
Q How is it consistent physiologically?
A The most consistent thing is the fact that anal stimulation or rectal stimulation will cause a reflection to defecate and that is the thing that was most physiologically consistent, as well as the fact of him describing the pain going along with the situation.
Q Would ejaculation have to occur to cause [the child] to have to go to the bathroom?
A No.
Q In plain English, Doctor, what you are saying, this is like having an enema or something?
A An enema involves actual placement of fluid into the rectum. But I think the thing that is most consistent with this is that, in a child or person who has no control over the anal sphincter, who has not learned control of the bowel movements, oftentimes [we] will use rectal stimulation with a Q-tip or catheter to produce a bowel movement in a child who has been otherwise constipated.
Q Was his reaction then, the fact he went to the bathroom after being anally penetrated, would that be normal in this particular case?
A Yes.
Q When you give rectal examinations to other children, does that ever happen?
A Yes, in children who are not toilet-trained, they always defecate.
Q And we are talking about a 12–year-old child. Is there anything unusual about him doing that after being anally penetrated?
A No.
Q And that's one of the details you felt compelling in his history?

testimony referred to "a specific occasion of truthfulness as opposed to the witness' general character for truthfulness." In light of this evidentiary analysis, the court of appeals concluded that since there were no witnesses to the assault other than the child, the pediatrician's statement could not be considered harmless error. In reversing the judgment on the basis of CRE 608(a), the court of appeals did not address other claims raised by the defendant. We granted the People's petition for certiorari to consider whether the pediatrician's statement that "[t]his history is very believable" violated CRE 608(a) and, if so, whether the admission of such testimony constituted reversible error.

## II.

We first consider whether the pediatrician's statement that "[t]his history is very believable" violated CRE 608(a). The People argue that Dr. Evans' statement, when viewed in the context of her entire testimony, was properly admissible because the statement was not an opinion that the child was telling the truth on any specific occasion but rather was an opinion that the medical history given by W.H. was physiologically consistent with the symptoms experienced by W.H. during the assault and with the doctor's objective findings during her physical examination of W.H. A resolution of this question requires an analysis

of CRE 608(a) and its applicability to the statement in question.

## A.

CRE 404(a) states that evidence of a person's character or character trait is generally not admissible for the purpose of proving that on a particular occasion the person acted in conformity with his character or character trait. There are several exceptions to the general rule of inadmissibility created by CRE 404(a),[6] however, one of which is listed in CRE 404(a)(3) as evidence of the character of a witness as provided in Rule 608. CRE 608(a), which addresses character evidence in the form of opinion or reputation testimony, states as follows:

> The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.[7]

CRE 608(a)(2) thus develops the exception to inadmissibility created by CRE 404(a)(3) by permitting character evidence in support of credibility only after the character of the witness for truthfulness has first been attacked by opinion or reputation evidence or

---

A Right.

**6.** Other exceptions listed in CRE 404(a) are:

(1) **Character of accused.** Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;

(2) **Character of victim.** Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor[.]

CRE 404(b), which specifically addresses the admissibility of evidence of *other crimes or wrongdoing,* states:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**7.** The term "or otherwise" in CRE 608(a) refers to instances in which the character of the witness for truthfulness has been directly attacked upon cross-examination. In those situations the trial court must determine whether the net effect of the cross-examination constitutes a direct attack upon the witness' character for truthfulness. If the trial court so determines, then opinion or reputation testimony for truthfulness becomes admissible. The Advisory Committee's Note to Federal Rule of Evidence 608(a) states that "[w]hether evidence in the form of contradiction is an attack upon the character of the witness must depend upon the circumstances." 56 F.R.D. 268 (1973); *see* M. Graham, *Handbook of Federal Evidence* § 608.2, at 447 (2d ed. 1986). We are not dealing in this case with a direct attack during cross-examination upon W.H.'s character for truthfulness.

otherwise. When a witness' character for truthfulness has been so attacked, CRE 608(a) authorizes the admission of evidence of the witness' character for truthfulness in the form of opinion or reputation testimony.

We applied CRE 608(a) in *Tevlin v. People*, 715 P.2d 338 (Colo.1986), and held that it was error to permit an expert witness to express an opinion on whether a child-victim was speaking the truth on a specific occasion, although we concluded that the error in admitting such opinion testimony was harmless. In that case, the child-victim initially told investigators that he had suffered his injuries as the result of a fall but later reported that his father, the defendant, had caused the injuries by hitting him with a belt. After the victim testified at trial that the defendant had beaten him with a belt, a social worker, who was qualified as an expert in the field of child abuse investigation, testified that, based on his interviews with the child-victim, he was of the opinion that the child-victim was telling the truth when he reported that the defendant had beaten him with a belt. We determined that such opinion evidence was inadmissible for two reasons: first, the foundation requirements of CRE 608(a) had not been met because there was "insufficient evidence that the victim's character for truthfulness had been directly attacked by the defense"; second, the content of the expert's opinion testimony was improper because "it failed to refer to the witness' general character for truthfulness and instead went to the witness' truthfulness on a specific occasion." *Tevlin*, 715 P.2d at 341. We recently reaffirmed *Tevlin* in considering this identical evidentiary problem. *People v. Snook*, 745 P.2d 647 (Colo.1987) (CRE 608(a) violated where trial court admitted expert testimony that children generally do not fabricate stories of sexual abuse, since child-victim's character for truthfulness had not been attacked prior to admission of expert opinion evidence); *People v. Oliver*, 745 P.2d 222 (Colo.1987) (on basis of *Tevlin*, trial court committed reversible error in permitting social worker and investigator, both of whom had personally interviewed child-victims of sexual assault, to testify that they believed child-victims were telling the truth during interviews); *see also People v. Koon*, 724 P.2d 1367 (Colo.App.1986) (therapist's expert opinion that child incest victim was truthful on specific occasions was inadmissible).

B.

CRE 608(a) does not prohibit all statements that may tend to support the credibility of a child-victim's out-of-court statements or in-trial testimony concerning a sexual crime. CRE 702, for example, states that if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or determine a fact in issue, a witness qualified as an expert may testify thereto in the form of opinion or otherwise. *See, e.g., United States v. St. Pierre*, 812 F.2d 417 (8th Cir.1987) (clinical psychologist's testimony as to certain traits and characteristics of sexually abused children as compared with those exhibited by child-victim was admissible); *State v. Moran*, 151 Ariz. 378, 728 P.2d 248 (1986) (in child molestation case, expert testimony that child-victim's behavioral characteristics, including recantation of sexual abuse by father, matched characteristics of other child-victims of sexual abuse was admissible to assist jury in explaining strange behavior of child-victim, although expert testimony calculated to tell jury that expert believed victim's earlier version of abuse was not admissible); *Koon*, 724 P.2d 1367 (expert testimony by police psychologist about specific behavioral patterns of child incest victim admissible where expert witness did not render opinion as to whether child was truthful in report of assault or was actual victim of incest); *State v. Middleton*, 294 Or. 427, 657 P.2d 1215 (1983) (expert witness permitted to testify concerning the reaction of a typical child-victim of familial sex abuse and to offer opinion whether victim, who had been impeached by prior inconsistent statements, reacted in typical manner in making inconsistent statements); *cf. People v. Hampton*, 746 P.2d 947 (Colo.1987) (expert testimony concerning rape trauma syndrome admissible in sexual assault

prosecution to corroborate testimony of victim with respect to late reporting of crime). Moreover, CRE 703 provides that the particular facts or data forming the basis of an expert opinion "may be those perceived by or made known to [the expert witness] at or before the hearing." Finally, CRE 704 permits testimony in the form of an opinion or inference, if otherwise admissible, even though "it embraces an ultimate issue to be decided by the trier of fact."

While these rules on expert opinion evidence repose considerable discretion in the trial court in balancing the usefulness of the opinion against the danger of unfair prejudice, *e.g., People v. Jensen,* 747 P.2d 1247, 1250 (Colo.1987); *Hampton,* 746 P.2d at 952–53; *People v. District Court,* 647 P.2d 1206, 1210–11 (Colo.1982), the rules are not intended to permit experts to "tell the jury what result to reach." *See* Fed.R. Evid. 704 Advisory Committee's Note, 56 F.R.D. 284, 285. We endorse, in this respect, the following observation of the Arizona Supreme Court in discussing the Arizona counterparts to the Federal Rule of Evidence:

> When the only evidence consists of the victim's accusation and the defendant's denial, expert testimony on the question of who to believe is nothing more than advice to jurors on how to decide the case. Such testimony was not legitimized by Rule 704, and is not admissible under Rule 702. The same principle applies to expert opinion testimony on whether the crime occurred, whether the defendant is the perpetrator, and like questions.

*State v. Moran,* 151 Ariz. at 383, 728 P.2d at 253 (footnote omitted).

### C.

In the instant case the district court, pursuant to section 13–25–129, entered a pretrial ruling which approved the admission of W.H.'s statement to Dr. Evans as a reliable statement made by a child-victim of a sexual crime. To this extent, Dr. Evans was clearly entitled to testify to the statement related to her by W.H., including W.H.'s naming of the defendant as the perpetrator, when the doctor examined W.H. at the hospital on November 5, 1984. No issue is raised here as to the propriety of the district court's evidentiary ruling in that respect. The critical question in this case is whether the district court erred in permitting Dr. Evans to testify, over the defendant's objection, that in her opinion the history related to her by W.H. "is very believable."

Dr. Evans' statement that "[t]his history is very believable" could possibly be construed as an opinion that the history related to her by W.H. was physiologically consistent with the symptoms experienced by W.H. during the assault and was also consistent with the medical observations made by the doctor during the physical examination of W.H. If so viewed, the doctor's statement would not go to the character of W.H. for truthfulness but rather would constitute proper opinion evidence on a medical matter that would assist the jury in determining a fact in issue. *See* CRE 702 (expert may testify in form of opinion in matter involving scientific, technical, or other specialized knowledge); CRE 703 (facts or data supporting opinion may be those perceived by expert witness before hearing); CRE 705 (expert witness may testify in terms of opinion, may offer reasons for opinion, and may disclose underlying facts or data supporting opinion). Such an interpretation, however, insinuates a limited meaning not readily apparent from the doctor's statement itself.

Since the history that W.H. gave to Dr. Evans included a reference to the defendant as the perpetrator of the sexual crime, Dr. Evans' statement that "[t]his history is very believable" was clearly susceptible of being interpreted by the jury as an expert opinion that W.H. was telling the truth when, during the hospital examination on November 5, 1984, he named the defendant as the perpetrator of the sexual assault. This interpretation is consistent with the terms employed by the doctor, in that the characterization "very believable" obviously connotes the sense that the doctor accepted W.H.'s history as truthful and accurate. In our view, this interpretation rep-

resents a plausible and commonsense understanding of the doctor's response. Under this interpretation, Dr. Evans' opinion on the believability of W.H.'s history was tantamount to an expert opinion on W.H.'s truthfulness on a specific occasion —namely, on November 5, 1984, when W.H. was examined at the hospital and named the defendant as his assailant.

When Dr. Evans' response is so interpreted, there can be no question that the statement that "[t]his history is very believable" did not qualify for admissibility under CRE 608(a). Dr. Evans was the prosecution's last witness, and at no time during the trial did the defense attack W.H.'s character for truthfulness. Consequently, the foundation requirements of CRE 608(a) for admitting opinion evidence of truthful character were never satisfied. Moreover, even if defense counsel on cross-examination of W.H. had attacked his character for truthfulness, CRE 608(a) would have permitted the prosecuting attorney to elicit on direct examination of Dr. Evans her opinion only as to W.H.'s general character for truthfulness, but not, as here, the doctor's opinion that W.H. was speaking the truth on a particular occasion. *E.g.*, *Oliver*, 745 P.2d at 225; *Tevlin*, 715 P.2d at 341.[8] We thus conclude that the trial court erred in admitting Dr. Evans' opinion concerning the believability of W.H.'s history.

### III.

■ Having determined that the admission of Dr. Evans' statement was error, we must now consider whether the error was harmless or, instead, requires a reversal and a new trial. CRE 103(a) states in relevant part that "[e]rror may not be predicated upon a ruling which admits or ex-

cludes evidence unless a substantial right of the party is affected." *See also* C.A.R. 35(e) (appellate court shall disregard any error not affecting substantial rights of parties); Crim.P. 52 (any error not affecting substantial rights shall be disregarded). The harmless error rule is an obvious recognition of the fact that "[a] perfect trial is an impossibility and minor mistakes will inevitably occur." *Callis v. People*, 692 P.2d 1045, 1053 (Colo.1984) (quoting *People v. Taylor*, 197 Colo. 161, 164, 591 P.2d 1017, 1019 (1979)). The proper inquiry in determining a harmless error question is not whether there was sufficient evidence to support the verdict without the improperly admitted evidence, but, rather, whether the error substantially influenced the verdict or affected the fairness of the trial proceedings. *Callis*, 692 P.2d at 1053; *People v. Quintana*, 665 P.2d 605, 612 (Colo.1983). If a reviewing court can say with fair assurance that, in light of the entire record of the trial, the error did not substantially influence the verdict or impair the fairness of the trial, the error may properly be deemed harmless. *See Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946); *Tevlin*, 715 P.2d at 342; *Quintana*, 665 P.2d at 612.

■ Our review of the record in this case convinces us that the trial court's erroneous admission of Dr. Evans' statement that "[t]his history is very believable" was harmless error. We are not dealing here with a situation in which the prosecuting attorney asked the expert witness to offer an opinion on whether a child-victim of a sexual crime was truthful on a particular occasion. On the contrary, Dr. Evans' statement was a passing remark made in

---

**8.** In the instant case, even if W.H.'s character for truthfulness had been previously attacked, Dr. Evans' opinion as to W.H.'s character for truthfulness on a specific occasion would not have been admissible under subsection (b) of CRE 608. CRE 608(b) provides that, in the discretion of the court, specific instances of the conduct of a witness, if probative of truthfulness or untruthfulness, may "be inquired into on *cross-examination of the witness* (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truth-

fulness or untruthfulness of another witness as to which character the witness being cross-examined has testified." (Emphasis added). Since CRE 608(b) authorizes inquiry into specific instances of conduct only on *cross-examination*, the use of specific instances of truthfulness or untruthfulness of the witness on *direct examination*, as here, is prohibited. *See* Fed.R.Evid. 608 Advisory Committee's Note, 56 F.R.D. 268–69 (1973); M. Graham, *Handbook of Federal Evidence* § 608.4, at 453 (2d ed. 1986).

response to the question, "What was particularly compelling about the history as told to you?" The challenged statement occurred during a lengthy direct examination in which the doctor related the history of the assault reported to her by W.H. and the results of the physical examination of W.H. at the hospital. Following the challenged statement, the doctor went on to explain the reasons why, apart from her improper opinion testimony about the believability of W.H.'s description of the sexual assault, she was of the opinion that W.H.'s medical history and symptomatology were consistent with his having been sexually assaulted on August 16, 1984. These reasons consisted basically of the physiological symptoms described by W.H. during the criminal episode and the enlarged raphe and slightly lax sphincter exhibited by W.H. during the physical examination. Moreover, prior to Dr. Evans' statement about the believability of W.H.'s history, the trial court had cautioned the jury that it was their prerogative to determine what weight and credit to give W.H.'s statement to the doctor and that in making that determination the jury should consider the age and maturity of the child, the nature of the statement, the circumstances under which it was made, and any other relevant factor.

Also of significance is the fact that W.H.'s statement to Dr. Evans about the sexual assault was not without corroboration. During the trial W.H. described the way in which the assault took place on August 16, 1984, and made an in-court identification of the defendant as the perpetrator. Dr. Evans testified that W.H.'s enlarged raphe and slightly lax sphincter, observed by the doctor during the physical examination in November 1984, were consistent with repeated acts of forcible anal intercourse committed against W.H. in August 1984. Both W.H.'s mother and Officer Freeman, in keeping with the pretrial ruling on admissibility pursuant to section 13–25–129, testified to the statement made by W.H. to each of them about the assault, including the fact that in each statement W.H. named the defendant as his assailant. In light of the total trial record, we are satisfied that the evidentiary error in this case did not substantially influence the jury verdict or impair the fairness of the trial and, hence, did not prejudice any substantial right of the defendant.

The judgment is reversed, and the case is remanded to the court of appeals with directions to consider the defendant's other claims raised in his appeal to that court but not addressed in the court of appeals' opinion.