The PEOPLE of the State of
Colorado, Petitioner,

v.

John FASY, Respondent.

No. 91SC220.

Supreme Court of Colorado,
En Banc.

May 18, 1992.

Rehearing Denied June 8, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Wendy J. Ritz, Asst. Atty. Gen., Appellate Section, Denver, for petitioner.

David F. Vela, State Public Defender, Frances Smylie Brown, Chief Appellate Deputy Public Defender, Denver, for respondent.

Justice VOLLACK delivered the Opinion of the Court.

We granted certiorari to consider the court of appeals decision in *People v. Fasy*, 813 P.2d 797 (Colo.App.1991), reversing defendant Fasy's conviction for sexual assault upon a child by one in a position of trust. The court of appeals concluded that the district court erred in admitting a psychologist's testimony that the victim suffered from a post-traumatic stress disorder, and reversed and remanded for a new trial. We reverse and remand with directions.

## I.

On June 14, 1988, the defendant, John Fasy (Fasy), was charged under section 18–3–405, 8B C.R.S. (1986),[1] with one count of sexual assault on a child by one in a position of trust. On December 19, 1988, a jury found Fasy guilty.

The People's case at trial consisted of the testimony of the victim, her mother, a school counselor, a police detective, and Dr. Mosley, the victim's therapist. The victim testified that in November 1985, Fasy lived next door and would babysit the victim for about forty-five minutes a day, three days a week, until the regular babysitter arrived. On the day of the incident, the victim stated that she was playing outside. Fasy told her to come into the house to take a bath. During the bath, Fasy sexually molested the victim. The victim testified that Fasy instructed her not to report the incident and threatened to kill or hurt her mother if she told. The victim did not disclose the incident until May 1988, when a school counselor talked to the victim and her classmates about improper touching. The victim was six years old at the time of the assault and nine years old when she testified.

The victim's mother, the school counselor, and a police detective corroborated the victim's account of the incident. The victim had provided details of the sexual assault to these witnesses, and they testified based on the victim's out-of-court statements concerning the incident, pursuant to section 13–25–129, 6A C.R.S. (1987) (out-of-court statements made by sexually abused child to third party are admissible). In addition to recounting the victim's statements about the assault, the mother also testified concerning the victim's behavior from the time of the incident to the date of disclosure. She testified that, among other things, the victim was experiencing nightmares, having difficulty sleeping, and was vomiting for no reason.

The final witness presented by the People was Dr. Mosley, a psychologist who had been treating the victim since June 1988. Fasy objected to the admission of Dr. Mosley's testimony that the victim suffered from post-traumatic stress disorder.[2] Fasy argued that such testimony should not be admitted because it was the equivalent of a statement that the child was telling the truth about the alleged sexual assault. The district court overruled Fasy's objection.

The district court qualified Dr. Mosley as an expert in child psychology. Dr. Mosley first described the symptoms of post-traumatic stress disorder and stated that a sexual assault on a child could be a traumatic event that could trigger the disorder. He then testified that the symptoms suffered by the victim—including sleeplessness, nightmares, and vomiting—were consistent with the symptoms of post-traumatic stress disorder. He expressed his opinion, as an expert in child psychology, that the victim suffered from post-traumatic stress disorder. Dr. Mosley did not testify as to the details of the incident, except for a statement that the victim told him that she had delayed in reporting the incident because of the threat against her mother and family.

■ The court of appeals reversed Fasy's conviction based on the district court's admission of Dr. Mosley's testimo-

---

1. Section 18–3–405, 8B C.R.S. (1986), provides:

   **Sexual assault on a child.** (1) Any actor who knowingly subjects another not his or her spouse to any sexual contact commits sexual assault on a child if the victim is less than fifteen years of age and the actor is at least four years older than the victim.

2. Post-traumatic stress disorder describes a group of characteristic symptoms that develop following exposure to a stressful situation which is outside the normal range of human experience. American Psychiatric Association, *Diag-* *nostic and Statistical Manual of Mental Disorders* 247 (3d ed. 1987) [hereinafter *DSM–III–R* ]. Typical symptoms of the disorder include: recurring distressing dreams; efforts to avoid thoughts or feelings associated with the trauma; and difficulty falling or staying asleep. *Id.* at 250. The disorder can affect children, *id.* at 249, including children who are victims of a sexual assault. C.B. Scrignar, M.D., *Post–Traumatic Stress Disorder* 51 (2d ed. 1988). In addition to the typical symptoms, a child may refuse to discuss the trauma and may also exhibit additional physical symptoms, such as

ny concerning the victim's post-traumatic stress disorder. Citing *People v. Koon*, 713 P.2d 410 (Colo.App.1985), and *People v. Snook*, 745 P.2d 647 (Colo.1987), the court of appeals first noted that it is impermissible to allow a witness to expressly or impliedly assert that the victim was being truthful on a specific occasion. It then concluded that Dr. Mosley's opinion that the victim was "suffering the after-effects of a prior sexual assault," combined with Dr. Mosley's testimony about the accusatory statement made to him by the child, conveyed to the jury that Dr. Mosley considered the child's report to be truthful.[3]

We granted certiorari to determine whether the court of appeals correctly concluded that Fasy's conviction should be reversed because the opinion expressed by Dr. Mosley was the equivalent of an impermissible expression of his belief that the victim was telling the truth on a specific occasion.

## II.

The People argue that Dr. Mosley's testimony concerning the victim's post-traumatic stress disorder is admissible pursuant to CRE 702 because Dr. Mosley's testimony was helpful in assisting the jury to understand other evidence and determine a fact in issue. They contend that the testimony corroborated the victim's testimony and placed the victim's post-assault behavior into context. We agree.

## A.

CRE 702 governs the admission of expert testimony. *People v. Hampton*, 746 P.2d 947, 951 (Colo.1987). CRE 702 provides:

> stomachaches and headaches. *DSM–III–R* at 249.

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

■ CRE 702 employs a "helpfulness" standard that is applied on a case-by-case basis. Jack B. Weinstein & Margaret A. Berger, 3 *Weinstein's Evidence* ¶ 702[02], at 702–13 to 702–18 (1988). The proffered expert testimony is admissible if it "will assist the fact finder to either understand other evidence or to determine a fact in issue." *Lanari v. People*, 827 P.2d 495, 502 (Colo.1992); *see also* Fed.R.Evid. 702 advisory committee's note. The critical question trial courts must answer when determining the admissibility of proffered expert testimony under CRE 702 is: " 'On *this subject* can a jury from *this person* receive appreciable help?' " *People v. Williams*, 790 P.2d 796, 798 (Colo.1990) (*quoting* Jack B. Weinstein & Margaret A. Berger, 3 *Weinstein's Evidence* ¶ 702[01], at 702–07 to 702–08 (1988)) (quoting 7 *Wigmore on Evidence* § 1923, at 21 (3d ed. 1940)).

CRE 703 and CRE 704 provide additional guidance to trial courts in determining the admissibility of expert testimony. CRE 703 provides that the facts or data forming the basis of the expert opinion "may be those perceived by or made known to [the expert] at or before the hearing" and that the facts or data need not be admissible if such facts or data are "reasonably relied upon by experts in the particular field." CRE 704 provides that "[t]estimony in the

---

**3.** Dr. Mosley did not opine that the victim was suffering the after-effects of a prior sexual assault. He opined that the victim was suffering from post-traumatic stress disorder.

Additionally, the court of appeals does not indicate the statement to which it is referring. A review of Dr. Mosley's testimony indicates that the only statement of the victim to which Dr. Mosley testified was the statement regarding the victim's reason for delay in reporting. The record states:

> Q [by the prosecution] The question is when you inquired as to her reason for not reporting this sooner, what was her answer to you? Did she give you one or more than one?
>
> A [by Dr. Mosley] It was a very clear reason. One reason that—that John had told her that if she told that he would kill her mother.
>
> Although hearsay, this statement was admissible pursuant to § 13–25–129, 6A C.R.S. (1987). Prior to this statement, the district court gave the jury a limiting instruction that the statement was an out-of-court statement by the alleged victim and that it was the jury's decision to determine the weight and credibility to be given the statement.

form of opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact."

### B.

A review of Dr. Mosley's testimony supports our conclusion that his testimony is admissible under CRE 702. The district court conducted an *in camera* hearing to determine whether the post-traumatic stress disorder testimony was admissible. During the hearing, Dr. Mosley testified to the causes of the disorder, that the disorder has gained general acceptance in the medical field, that he has treated persons who suffered from the disorder, that a sexual assault on a young child can cause the disorder, and, finally, that the victim suffered from the disorder and explained the basis for this diagnosis. The court ruled that, based on this testimony, he would allow Dr. Mosley to express his opinions as an expert in child psychology.[4]

After the *in camera* hearing, Dr. Mosley was recognized before the jury as an expert in the field of child psychology. He described the various emotional and physical symptoms of post-traumatic stress disorder and also stated that a sexual assault is a traumatic experience that can trigger the disorder. He then testified that the victim's symptoms were consistent with a child suffering from the disorder. After reviewing the victim's symptoms, Dr. Mosley testified that it was his opinion, based on a reasonable degree of psychological certainty and his counseling of the victim, that the victim suffered from post-traumatic stress disorder.

Dr. Mosley's testimony clearly assisted the jury in understanding the victim's behavior after the incident. *See People v. Pronovost*, 756 P.2d 387, 388 (Colo.App. 1987) (psychiatrist's testimony that victim's demeanor and the manner in which victim gave her account of incident were consist-

ent with typical child abuse cases was admissible), *aff'd on other grounds*, 773 P.2d 555 (Colo.1989); *People v. Koon*, 724 P.2d 1367, 1369–70 (Colo.App.1986) (testimony of psychologist about behavioral patterns of child incest victims and testimony of sociologist that victim fit these patterns admissible in child abuse case); *United States v. St. Pierre*, 812 F.2d 417, 419–20 (8th Cir.1987) (psychologist's comparison of characteristics of sexually abused children to characteristics exhibited by victim was admissible); *State v. Myers*, 359 N.W.2d 604, 610 (Minn.1984) ("Background data providing a relevant insight into the puzzling aspects of the child's conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children.").

The victim's mother testified that the victim was suffering from nightmares and was vomiting for no apparent reason. Dr. Mosley's testimony corroborated this testimony and provided the jury with a possible explanation for these symptoms.

The victim also delayed reporting the incident. Dr. Mosley testified that the victim had informed him that she delayed reporting the incident because she feared that Fasy would return to the house and kill her mother. He testified that the victim had a continuing fear that Fasy would intrude upon her and her family. Dr. Mosley testified that the theme of the nightmares experienced by the victim was "[a] theme of being intruded upon, her family being intruded upon, being harmed in some way." The victim's nightmares, fearfulness, anxiety, and reluctance to discuss the incident were symptoms consistent with the post-traumatic stress disorder. Thus, Dr. Mosley's testimony regarding the victim's post-traumatic stress disorder assisted the jury in determining why the victim acted the way she did and delayed reporting the incident.[5]

"Trial courts have broad discretion to determine the admissibility of expert testi-

---

**4.** The *in camera* hearing was conducted after Fasy objected during Dr. Mosley's direct testimony. Prior to the hearing, Dr. Mosley had testified that he was a licensed psychologist with master's and doctorate degrees in psychology.

He testified that his practice covered the areas of child custody, child sexual abuse, families in transition, and divorce-related issues.

**5.** Fasy contends that the victim delayed in reporting because of the threat that her mother

mony pursuant to CRE 702, and the exercise of that discretion will not be overturned in the absence of manifest error." *Lanari v. People,* 827 P.2d 495, 502 (Colo. 1992); *see also People v. Williams,* 790 P.2d 796, 798 (Colo.1990); *People v. Hampton,* 746 P.2d at 952–53. We find that under CRE 702 the district court did not abuse its discretion in admitting Dr. Mosley's testimony on the victim's post-traumatic stress disorder.

### III.

■ Fasy argues, however, that Dr. Mosley's testimony, combined with his opinion that the victim suffered from a post-traumatic stress disorder, constituted an implied assertion that the victim was being truthful and, thus, such testimony is inadmissible pursuant to CRE 608(a). We disagree.

### A.

■ CRE 608(a) is an exception to the general rule in CRE 404(a) that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." CRE 608(a) provides:

> Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

Thus, under CRE 608(a), opinion testimony that a witness has a truthful character may be admissible only if the witness' truthful character has been placed in issue.

### B.

In the present case, Dr. Mosley testified in general terms regarding post-traumatic stress disorder. He did not provide a detailed history of the sexual assault. He did not make any statement relating to the victim's truthfulness or untruthfulness on a specific occasion. Likewise, the People's examination of Dr. Mosley did not focus on the truthfulness of the victim's statements.

Dr. Mosley's testimony constituted proper opinion evidence on a matter that would assist the jury in understanding the victim's behavior after the assault. CRE 702; *People v. Koon,* 724 P.2d 1367, 1369–70 (Colo.App.1986). He compared the characteristics of the post-traumatic stress disorder with the victim's characteristics and concluded that she was suffering from the disorder. Fasy cross-examined Dr. Mosley, and the jury determined the weight of Dr. Mosley's testimony. *See People v. Hampton,* 746 P.2d 947, 952 (Colo.1987); *State v. Marks,* 231 Kan. 645, 647 P.2d 1292, 1299 (1982) (post-traumatic stress disorder testimony "merely offered as any other evidence, with the expert subject to cross-examination and the jury left to determine its weight"). The district court properly instructed the jury that it was not bound by Dr. Mosley's testimony and that it was the jury's decision to determine the weight to give to Dr. Mosley's testimony.[6] *See Hampton,* 746 P.2d at 952; *see also Schmutz v. Bolles,* 800 P.2d 1307, 1315 (Colo.1990) (jury presumed to follow the court's instructions).

---

would be killed if she reported the incident and that the jury did not need an explanation to understand that this threat was the reason for the delay. Fasy's contention ignores the effect of the threat on the victim and adopts too simplistic a view as to why the victim delayed in reporting. Dr. Mosley's post-traumatic stress disorder testimony assisted the jury by showing how Fasy's threat affected the victim and manifested itself as one of the symptoms of the victim's post-traumatic stress disorder.

Moreover, during the *in camera* hearing to determine the admissibility of Dr. Mosley's testi-

mony, Fasy's counsel stated that he would not strongly challenge the victim's delay in reporting and that delay was not "a big, strong factor in our defense." Yet, Fasy's closing argument extensively addressed the victim's delay as one of the three factors which proved that the victim's allegations were nothing but a lie.

**6.** Instruction 13 stated:

> You have heard a witness who has testified as an expert. You are not bound by the testimony of experts; their testimony is to be weighed as that of any other witness. It is

## C.

Fasy also argues, relying on *People v. Gaffney*, 769 P.2d 1081 (Colo.1989), that Dr. Mosley's statement on redirect examination that the victim's symptoms were related to the sexual incident is grounds for reversal. We disagree.

On cross-examination, Fasy questioned Dr. Mosley about other possible traumatic events in the victim's life, such as her parent's divorce and moving, which could have triggered the victim's post-traumatic stress disorder. On redirect, the People asked Dr. Mosley:

> Would that be true individually and collectively? Let's say if she had other stresses in her life, let's say childhood stresses in school or with siblings or any other dimensions you're aware of in her life, collectively could they cause this disorder and syndrome, the vomiting and nightmares?

Dr. Mosley responded:

> I believe those symptoms in the diagnosis were related to the sexual incident, that other things in her life perhaps did not ease the burden, but all of the other things in her life together would not have warranted that disorder, that result.

In *Gaffney*, the defendant was charged with sexual assault of a twelve-year-old boy. The trial court admitted the testimony of a doctor who had examined the boy. The doctor testified that in her opinion the history related to her by the victim "is very believable." *Id.* at 1087. Prior to this statement, the doctor had testified to the history related to her by the victim, including the victim's naming of Gaffney as the perpetrator. *Id.* After recognizing that the doctor's statement could be construed as proper opinion evidence, this court ruled that because the history related to the doctor by the victim included a reference that the defendant was the perpetrator of the crime, the statement that " '[t]his history is very believable' ... was tantamount to an expert opinion on W.H.'s truthfulness on a specific occasion" and was thus inadmissible under CRE 608(a). *Id.* at 1087–88.

entirely your decision to determine what

Dr. Mosley's testimony did not include the detailed history reported to him by the victim nor any statement that the victim was truthful or believable. The People's question and Dr. Mosley's response on redirect were in response to Fasy's cross-examination of Dr. Mosley as to other possible traumatic events in the victim's life which would have triggered the victim's post-traumatic stress disorder. Dr. Mosley provided his expert opinion that the symptoms were related to the sexual incident. His testimony provided an objective response to questions raised by Fasy during cross-examination. Dr. Mosley's statement on redirect constitutes proper opinion evidence on a matter that would assist the jury in determining a fact in issue. CRE 702.

We reverse the court of appeals decision and remand to the court of appeals with directions to reinstate the judgment of conviction and sentence.

weight shall be given their testimony.