The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Cory MORRISON, Defendant–Appellant.

No. 96CA1565.

Colorado Court of Appeals,
Div. II.

March 18, 1999.*

As Modified on Denial of Rehearing
May 13, 1999.

Certiorari Granted Oct. 4, 1999.

* Opinion Previously Announced as Non-Published     cial Publication.
on November 19, 1998, is now Selected for Offi-

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, David R. Little, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Robin Desmond, Deputy State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge CRISWELL.

Defendant, Cory Morrison, appeals a judgment of conviction entered on a jury verdict finding him guilty of eight counts of sexual assault on a child. We affirm.

All eight counts were based on a series of assaults upon two young boys that had occurred during a two-year period when defendant was employed as a live-in, part-time, babysitter for one of the victims. Defendant also occasionally babysat the other victim during this period.

At trial, both victims, who were then nine years old, testified. Several other witnesses, including relatives and police officers, were also allowed to testify as to the hearsay statements of both victims, pursuant to § 13–25–129, C.R.S.1998. In addition, an expert witness testified with respect to the dynamics of sexual abuse. Focal issues at trial included the credibility of both victims and one of the victim's untruthfulness in other instances.

I.

Defendant initially contends that the trial court abused its discretion by denying a challenge for cause of a prospective juror who had allegedly expressed her inability to be fair and impartial. We conclude that, whether there was an abuse of discretion or not, defendant suffered no prejudice.

During voir dire, the trial court questioned the juror and satisfied itself that, with an instruction about the presumption of innocence, the juror would be able to determine the case on the evidence submitted. Accordingly, the trial court denied defendant's challenge. Thereafter, defendant chose not to excuse the juror by the exercise of a peremptory challenge, and she remained on the jury during the trial. Defendant used all of his peremptory challenges to excuse other prospective jurors.

To demonstrate that a defendant is prejudiced by a trial court's improper denial of a challenge to a prospective juror for cause, a defendant must exhaust all of his peremptory challenges. *People v. Rodriguez*, 914 P.2d 230 (Colo.1996).

Further, it has been said, although not definitively decided, that one of those challenges must be expended on the juror who assertedly should have been removed for cause. *See People v. Prator*, 856 P.2d 837 (Colo.1993); *People v. Macrander*, 828 P.2d 234 (Colo.1992) (fn. 13) (required prejudice reflected by defendant "being forced to use a peremptory challenge to remove the suspect juror whom the trial court refused to excuse for cause and by using all other available peremptory challenges on other prospective jurors.") The statement in *People v. Russo*, 677 P.2d 386, 388 (Colo.App.1983), *rev'd on other grounds*, 713 P.2d 356 (Colo.1986) that there is no "principle of law which requires the defendant to exhaust his remaining challenge on the juror who was not removed for cause," does not persuade us otherwise. *Russo* was decided before either *Rodriguez*, *Prator*, or *Macrander* was announced. As the supreme court noted in a footnote to its *Russo* opinion, there is an "obvious tension" between the quoted statement and earlier

supreme court precedent. See *People v. Russo, supra,* 713 P.2d at 363, fn. 7.

█ Here, because defendant chose not to excuse the juror in question by use of a peremptory challenge, the court's denial of his challenge for cause did not have the effect of reducing the number of peremptory challenges that he could exercise. Hence, he has failed to demonstrate how the court's denial of his challenge worked any prejudice upon him.

## II.

Defendant next argues that the trial court committed plain error by allowing the prosecution's expert to give an opinion with respect to the credibility of the victims. We disagree.

As part of the prosecution's case, a licensed marriage and family therapist with a Ph.D. in clinical psychology testified as an expert in the area of sexual abuse treatment and the dynamics of sexual abuse. During the expert's first day of testimony, she testified, in general terms, about many aspects of sexual abuse including: (1) the grooming of victims by sexual offenders; (2) the common patterns of disclosure of sexual abuse by children, including delayed reporting; and (3) the differences between male and female victims, including the use of empowerment techniques by males. Defendant does not object to this portion of the expert's testimony.

The next morning, the prosecutor continued her direct examination of the expert with respect to empowerment statements that boys commonly make. The following exchange then took place between the prosecutor and the witness:

Q: ... we were talking about [sic] little bit yesterday about the difference between boys and girls in terms of their testimony and also statements, and that empowerment statements, I believe you called them, that boys will make.

Let me give you a hypothetical. Doctor, for example, if I were to give you the facts as follows: 9 year old boy who has made a report of sexual abuse, and he describes a large number of incidents of sexual contact, ranging from perpetrator, placing the boy's penis in his mouth as well as the perpetrator placing his penis between the boy's buttocks, and the boy reports this to the sheriff's department. And the boy also tells the investigator that while the perpetrator had his penis in his mouth he urinated in the perpetrator's mouth. He also stated that he ran away from the perpetrator. The perpetrator grabbed him and gave him a bruise.

Now, if I were to tell you that the 9 year old boy indicated to the sheriff's office that he lied when he talked about the urination in the mouth and the perpetrator chasing him, based on your experience with children and how they report, would those statements to the officer, concerning urinating in his mouth and running away – would those statements be concerning to you?

A: That hypothetical sounds like a good example actually, of what I was talking about yesterday when little boys–what they do with empowerment issues. He sounds to me like–or at least the way I would interpret that would be that was a way that the little boy could feel empowerment like one of the methods in his own mind, sort of [sic] psychological weapon to get back at the offender and again, just to review what I was talking about with empowerment yesterday it's common for particularly little boys to do that kind of thing with sexual abuse disclosures. They're not comfortable with being the victim and feeling weak and helpless. So many times we will see little boys say things like, 'I hit him. I beat him up. I did something mean back to him,' or 'I was fighting, but he did it any [sic] way.' So your hypothetical sounds like a good example actually of empowerment.

Q: Do you find that statements such as that are common when young boys are disclosing sexual abuse?

A: Yes. That's what I'm saying that I've seen that a lot with little boys particularly.

Q: Would that lie be inconsistent with sexual abuse?

A: No, it's important that as you are assessing the child's statement and credibility of the child's statements that you look at the whole picture, that that's one of the dynamics that you would look at certainly. And, you know, understand what that part of it means. It certainly doesn't mean that – if a child makes something up in that empowerment issue that the rest of what they say isn't true.

The hypothetical situated stated by the prosecutor contained facts identical to those presented by the evidence here. Specifically, one victim's report described the sexual abuse in the same way as in the prosecutor's hypothetical, but that victim later admitted that he had lied about two aspects of the incidents: the urination in his mouth and the perpetrator chasing him.

The expert witness then testified, again in general terms, about: (1) reactions that child sexual abuse victims commonly experience; (2) problems children typically have in recounting specific instances of past sexual activity; (3) reasons why children lie; and (4) possible effects upon the child of videotaping interviews. Shortly thereafter, the following exchange took place between the prosecutor and the witness:

Q: Doctor, my last question is in your experience, working with 9 year old boys, is it typical for a 9 year old boy to fabricate a homosexual experience?

A: I would say no.

Q: Can you explain that?

A: Well, first of all, it would not be typical for a 9 year old child period to fabricate something about sexual abuse, because in order to fabricate or make up a story you have to know something about it. And most 9 year olds don't have enough sexual knowledge to make up a sexual story and carry it through. So that would be one issue. Just in terms of false allegations with sexual abuse in children in general the studies are pretty consistently showing that there is a very low statistic of false allegations, fictitious reports by children between 2 and 7 percent. And that most of the fictitious reports that are made are made by adults alleging something happened to a child or by disturbed adoles-

cents. Also we talked a little bit about the issue of the stigma of homosexuality for little boys and their development yesterday, and that would be another reason I would not think typical of 9–year–old boys to make up a homosexual experience.

Q: Would there be any motivation for them to do it?

A: No. Making up a story about whether there is any kind of sexual abuse does not bring any rewards to the child. What it brings is a lot of chaos to their lives. And they end up –once they hit the system and the report is made, they go through an incredible process in talking to all the different professionals and having to tell their story over and over again, and the system itself can be traumatizing process for them. So it's not the kind of thing that a child would have a real reason to lie about to get something that they want or have some pleasure from. It's definitely the opposite.

Defendant did not object to any of this testimony. On this appeal, however, relying upon *People v. Snook,* 745 P.2d 647 (Colo. 1987), he argues that it amounted to an improper implied assertion that one of the victims was telling the truth on a particular occasion. We conclude that all but a single portion of the testimony of this witness was proper testimony and that that portion did not rise to the level of plain error.

In *People v. Snook, supra,* before the child victim's character for truthfulness had been attacked, the prosecution presented an expert witness who testified, in essence, that children generally do not fabricate stories about sexual abuse. Noting that the only conceivable use that the jury could have made of this testimony was to affirm that the victim was telling the truth and that CRE 608(a) permitted favorable opinion evidence with respect to a witness' character for truthfulness only after that character is attacked, the court held that such testimony was improperly admitted for this purpose. *See also People v. Gaffney,* 769 P.2d 1081 (Colo.1989) (where only evidence is victim's accusation and defendant's denial, expert's testimony that the history given by victim is "believa-

ble" improper); *People v. Eppens*, 948 P.2d 20 (Colo.App.1997), (*cert. granted* Dec. 22, 1997).

In reaching this conclusion, the *Snook* court specifically observed that it was expressing no opinion:

> on whether expert testimony concerning behavioral patterns of sexually abused children falls within the ambit of CRE 608(a) simply because it may corroborate the victim's testimony.

*People v. Snook, supra* (fn. 3).

*Snook* does not prohibit testimony from an expert that the "victim's demeanor and the manner in which she [gives] her account of the incident [are] consistent with typical child abuse cases." *People v. Pronovost*, 756 P.2d 387 (Colo.App.1987), *aff'd on other grounds*, 773 P.2d 555 (Colo.1989).

In addition, in its later opinion in *People v. Fasy*, 829 P.2d 1314 (Colo.1992), the supreme court, in responding to the issue left unanswered in *Snook*, cited *People v. Pronovost, supra*, with approval and held that the admission of an expert's opinion with respect to whether a child's reactions were consistent with those of a child who had been subjected to sexual abuse is governed by CRE 702. That rule allows expert testimony upon a subject if that testimony will assist the jurors in determining an issue presented to them.

Hence, in *Fasy*, the court approved of the admission of expert testimony that child victims of sexual abuse often suffer from a post-traumatic stress disorder and that the particular victim in that case was suffering from that disorder. In describing the basis for that diagnosis, the expert in *Fasy* relied upon the victim's description of her nightmares and her statement that she was frightened of the defendant. Finally, this expert expressed the view that the victim's delay in reporting the incident arose from this fear and was consistent with actions of children suffering from a post-traumatic stress disorder. *See also People v. Koon*, 724 P.2d 1367 (Colo.App.1986).

The expert's testimony in *Fasy* necessarily carried with it the implication that the child's report of sexual abuse was true. Nevertheless, because the expert testified in general terms, did not focus on the truthfulness of the child's statements, and did not, except in one isolated instance, make any explicit reference to the victim's truthfulness, the court held that it was proper expert testimony.

In our view, all of the expert's testimony here, with one possible exception, was similar to that approved by *Fasy*. The expert here specifically informed the jurors that she had reviewed some of the statements made in this case only to obtain an understanding of the issues, and she emphasized that none of her testimony was to be taken as an endorsement of the credibility of any individual.

The hypothetical question posed to this witness contained facts substantially identical to those disclosed by the evidence here, *i.e.*, one of the victims had made rather bizarre accusations against defendant and had later withdrawn them. The expert's opinion that such actions are typical of the method of empowerment used by young male victims was admissible under CRE 702 to explain that such accusations and later denials by such a victim are not necessarily unusual.

Finally, we recognize that, after the specific discussion of the empowerment examples, the prosecutor asked this witness whether it is typical for children of the victims' age to lie about homosexual acts. The witness responded in some detail as outlined above.

This testimony is quite similar to that condemned by *Snook*. We will, therefore, assume that such question and testimony was improper.

However, the circumstances presented here differ considerably from those in *Snook*. First, in *Snook*, there had been an objection made by the defense to the testimony in question, and the trial court had specifically authorized it. Hence, the question facing the *Snook* court was whether the admission of such testimony was harmless error, not, as is the question here, whether plain error occurred.

Second, the expert here went to great lengths to explain to the jury that she had not considered, and was not expressing any

opinion upon, the credibility of the victims in this case. Whether or not this disclaimer removed entirely any possible inference that the jurors might draw respecting the truthfulness of these victims from her testimony, it surely had a minimizing effect.

Finally, substantially all of this expert's testimony was properly received under CRE 702 to aid the jury in understanding the typicality of reactions by young boys who have been subjected to sexual abuse that might, under other circumstances, be considered bizarre. In contrast, there is nothing in *Snook* to indicate that the circumstances there would have authorized expert testimony for any purpose other than to affect the jurors' credibility determinations.

Here, even if we assume that the receipt of this portion of the expert's testimony was improper, we may reverse the jury's determination of defendant's guilt only if we are convinced that the receipt of that evidence so undermined the concepts of fundamental fairness as to cast doubt on the reliability of the judgment of conviction. *See Wilson v. People*, 743 P.2d 415 (Colo.1987) (establishing standard for plain error). Given the circumstances described above, we conclude that the receipt of this testimony did not constitute plain error.

### III.

Defendant lastly contends that the trial court erred by admitting cumulative hearsay statements of the child victim because the prejudicial impact of such statements outweighed their probative value. Again, we disagree.

Prior to trial and over defendant's objections, the trial court ruled that four witnesses could testify, pursuant to § 13–25–129, C.R.S.1998, as to statements made to them by one of the victims and six witnesses could testify as to statements made to them by the other victim. In addition, both victims testified at the trial with respect to their version of the events.

On appeal, defendant does not question the propriety of the trial court's conclusion that these statements were admissible under § 13–25–129. Instead, he argues that, pursuant to CRE 403, at least some of this evidence should have been excluded because its cumulative, prejudicial effect substantially outweighed its probative value. The court's ruling, defendant argues, allowed eight witnesses to repeat the victim's story and, thereby, to bolster their credibility unfairly.

■ It is true that relevant evidence may be excluded under CRE 403 if its probative value is substantially outweighed by the danger of unfair prejudice. The admission of such evidence, however, is within the trial court's discretion as is the balancing of the probative value against the prejudicial effect of the proffered evidence. *People v. Williams*, 899 P.2d 306 (Colo.App.1995). Evidence that is relevant and material does not become inadmissible simply because it is cumulative.

■ The fact that evidence is cumulative does not, by itself, render the evidence inadmissible. Instead, admission of cumulative evidence amounts to an abuse of discretion only if it is manifestly arbitrary, unreasonable, or unfair under the circumstances. *People v. Rodriguez*, 888 P.2d 278 (Colo.App. 1994).

■ Moreover, in reviewing a trial court's decision to admit the evidence, we must assume the maximum probative value that a reasonable jury might give the evidence and the minimum unfairness reasonably expected from the evidence. *People v. Lowe*, 660 P.2d 1261 (Colo.1983).

■ A focal issue in this case was that both victims had lied and had changed their stories significantly. Moreover, defendant suggested that the investigators had used leading questions and positive reinforcement to encourage the victims to accuse defendant of sexual abuse. Hence, the statements were relevant to material issues in the case. Mere repetition of these relevant statements, under the circumstances, does not make them prejudicial. *See People v. Salas*, 902 P.2d 398 (Colo.App.1994) (adult testimony repeat-

ing child victim's out-of-court statements with respect to sexual assaults not unduly prejudicial merely because child victim testified or because they repeated the child victim's account of the assault).

Moreover, any prejudicial effect of the evidence was mitigated by the trial court giving a cautionary instruction, both when the evidence was admitted and at the close of the case. *See People v. Williams supra.* We will presume the jury understood and heeded these instructions. *People v. Price,* 903 P.2d 1190 (Colo.App.1995). Hence, under these circumstances, there was no abuse of discretion in the trial court's ruling.

The judgment is affirmed.

Judge CASEBOLT and Judge VOGT concur.