**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Steven Matthew COOK, Defendant– Appellant.**

**No. 06CA0478.**

Colorado Court of Appeals, Div. II.

Oct. 16, 2008.

John W. Suthers, Attorney General, Katherine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROY.

Defendant, Steven Matthew Cook, appeals his fourteen convictions of various child-related sex offenses. We reverse and remand for a new trial.

Defendant and his wife had a daughter in September 1997. They began divorce proceedings in October 1999, and defendant moved in, and had a romantic relationship, with a neighbor who also had a daughter (girlfriend's daughter). He lived with her until early March 2004 at which time he moved back in with his ex-wife and his daughter, and then moved out again in mid-August 2004.

Defendant was charged, convicted, or acquitted as follows:

- Counts one through four: sexual exploitation of children, class three felony, § 18–6–403(3)(a), C.R.S.2008. Defendant was convicted on all four counts; counts one through three related to the girlfriend's daughter and four as to his daughter.
- Count five: sexual assault on a child—victim less than 15—pattern of abuse, class three felony, § 18–3–405(1), (2)(d), C.R.S.2008. Defendant was acquitted.
- Counts six through eight: unlawful sexual contact—coerce child, class four felony, § 18–3–404(1.5), C.R.S.2008. Defendant was convicted on all three counts, which related to the girlfriend's daughter.
- Count nine: attempted sexual assault on a child—victim less than 15, class five felony, §§ 18–2–101, 18–3–405(1), C.R.S. 2008. Defendant was convicted on the count, which related to the girlfriend's daughter.
- Counts ten and eleven: indecent exposure—victim under 15, class one misdemeanor, § 18–7–302(1), (2)(b), C.R.S. 2008. Defendant was convicted of both counts; count ten related to his daughter and eleven to the girlfriend's daughter.
- Count twelve: sexual exploitation of children—sell or publish, class three felony, § 18–6–403(3)(b), C.R.S.2008. Defendant was convicted on the count, which related to the girlfriend's daughter.
- Counts thirteen and fourteen: sexual exploitation of children—possess material—for distribution, class three felony, § 18–6–403(3)(c), C.R.S.2008. Defendant was convicted on count fourteen, for which no victim was specified, and acquitted on count thirteen.
- Count fifteen: sexual exploitation of children—possess material, class one misdemeanor, § 18–6–403(3)(b.5), C.R.S.2008. Defendant was convicted, and no victim was specified.
- Count sixteen: aggravated incest—defendant's child under 21, class three felony, § 18–6–302(1)(a), C.R.S.2008. Defendant was acquitted.
- Count seventeen: attempted sexual assault on a child—victim less than 15—position of trust, class four felony, §§ 18–2–101, 18–3–405.3(1), (2), C.R.S.2008. Defendant was convicted on the count, which related to the girlfriend's daughter.
- Count eighteen: crime of violence, sentence enhancer to counts one through three, § 18–1.3–406(2)(b), C.R.S.2008. Defendant was convicted of the count, which related to count three.

All charges against defendant stem from incidents occurring between October 1, 1999 and March 31, 2004.

A forensic examination of several computers to which defendant had access during the relevant period did not disclose any images of the victims or evidence that images of the children had been transmitted over the Internet. Defendant did not testify at trial.

Defendant was sentenced to consecutive prison terms of ten years to life on counts one through four (the measuring sentences), and lesser concurrent terms on all other convictions. This appeal followed.

## I. Credibility

Defendant argues that reversal is required because of testimony from two investigating officers and a forensic interviewer vouching for the children's credibility. Because, in our view, this issue is dispositive, we need ad-

dress the testimony of only one of the investigating officers.

### A. Defendant's Daughter

Defendant was granted weekend visitations with his daughter at the girlfriend's house while he resided there. His daughter first made allegations of sexual contact in September 2004 after it was reported that she sometimes cried and seemed distraught when defendant picked her up. The investigating officer contacted defendant's ex-wife and then spoke with the daughter and a social worker at school. During that first interview, the daughter told the investigating officer that defendant drank, swore, spoke badly of her mother, and threatened the daughter. The investigating officer relayed the contents of the interview to the ex-wife, who picked the daughter up from school early and took her to work the next day. While at work, the ex-wife told a co-worker that she was upset because the daughter said that there was sexual activity going on in defendant's house. The co-worker then took the daughter aside and questioned her, later testifying that the daughter told her that defendant looked at naked women on the computer and played with himself. Armed with this new information, the ex-wife called the investigating officer, who then arranged for the daughter to be interviewed by a forensic interviewer.

The forensic interview was videotaped and shown to the jury. During the session, the daughter repeated that defendant looked at naked women on the computer and touched himself, while making masturbatory motions with his hands, and that he would unzip his pants. The daughter first denied that defendant ever asked her to come over and look, but then agreed that sometimes he did. She also denied that he ever touched her or asked to look at her and denied that he had asked her to watch his activities when he lived with his girlfriend. But she went on to say that she knew he had made the girlfriend's daughter watch because she told her all about it; that she saw defendant showing the computer to the girlfriend's daughter; and that the girlfriend's daughter told her that defendant made her watch him go to the bathroom. The daughter also said that she had once walked in on defendant watching a movie with naked women in it and described him as wearing red-checked underwear.

The daughter was then asked about the computer, and she said it had a camera and that defendant sometimes directed the camera at his own genitals. When asked specifically about defendant's genitals, the daughter said it was both skinny and fat; did not know if it was hard or soft; had never seen anything come out of it; and had never been asked to touch it, but claimed she saw the girlfriend's daughter touching it.

In police interviews, defendant denied viewing pornography on the computer or masturbating in front of his daughter. Later in September, the ex-wife called the police to report new allegations from the daughter. The daughter then alleged that defendant had patted her genitals and taken pictures of her and the girlfriend's daughter with the webcam.

The daughter was interviewed by a second forensic interviewer, and the jury saw the video-recording of that interview. She made the same claims—defendant viewed naked girls on the computer and played with himself—however, she stated that this had happened the previous Saturday, when in fact she had not seen defendant for at least three weeks. When asked to draw defendant's genitals, she said she did not know what it looked like and claimed to never have seen it, although later in the interview she said she saw it sometimes, but did not know how to draw it. The daughter then stated that defendant patted her genitals and made her take off her pants.

The camera angle for the forensic interview was such that it is improbable that the jury could form an independent opinion of the daughter's credibility based on her facial expressions or body language.

The daughter's testimony at trial was similar. While she testified that defendant once touched her between her legs with his hand while she was dressed in her underwear, after he had asked her to remove her pants, she did not remember which house they were in at the time or whether he rubbed her.

She remembered that he had a computer with which he viewed naked women while fondling himself, but she did not remember him taking pictures of her with the computer's camera. While the daughter's demeanor cannot be determined from a transcript, her answers were single words or short phrases such as, "no," "I don't know," and "I don't remember" in response to leading questions.

### B. The Girlfriend's Daughter

Defendant lived with the girlfriend from October 1999 until March 2004. The girlfriend's daughter was five and a half years old when he moved in and ten when he left.

When asked about what the daughter had said, the girlfriend's daughter reacted with tears and panic and said that defendant had taken pictures of her, but denied that any touching had occurred. The girlfriend's daughter then stated that defendant's conduct started when she was nine years old. She testified that defendant made her take off her pants and show her vagina, which he would show on the Internet using a webcam. During these times, defendant would touch himself.

The girlfriend's daughter also stated that defendant viewed naked adults and children on the computer and that she had seen him ejaculate several times. She testified that he asked her multiple times to touch his penis, but she declined. She also said that he asked if he could touch her, and she again said "no."

### C. Analysis

■ At the outset, we note that this case turns entirely on the credibility of the daughter and the girlfriend's daughter. Both children testified at trial, and their pretrial statements made to investigating officers and their recorded forensic interviews were presented to the jury. In addition, sexually explicit computer images of other children were admitted into evidence. Defendant's semen was found on a computer keyboard, but there was no evidence the children were present when it was deposited. There was no corroborating evidence, no pictures of the children on the computers despite their testimony that they were told to expose themselves in front of a webcam, no evidence of any physical injury consistent with sexual assault, no third-party observations, and no admissions by defendant.

Under CRE 404(a), "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion." CRE 608(a) provides a limited exception to the general rule of CRE 404(a):

> Opinion and reputation evidence of character. The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

■ It is well established that CRE 608(a)(1) does not permit a witness to express an opinion that a child was telling the truth on a specific occasion. *See People v. Gaffney,* 769 P.2d 1081, 1088 (Colo.1989).

> [H]owever, and particularly where the victim is a very young child, an opinion as to the credibility of the victim is admissible if that testimony relates to general characteristics only. It is proper, for instance, to elicit an opinion as to whether children, in general, have the sophistication to lie about having experienced a sexual assault.

*People v. Gillispie,* 767 P.2d 778, 780 (Colo. App.1988) (citation omitted).

The investigating officer testified that she attended the daughter's first forensic interview, contacted and spoke with the ex-wife, and then decided to investigate defendant. After the revelation of the new allegations following the first forensic interview, the investigating officer obtained a search warrant for defendant's computers and scheduled a second forensic interview with the daughter. She then contacted the girlfriend and inquired as to the girlfriend's daughter. The girlfriend reported another allegation against defendant, which the investigating officer forwarded to the police department with juris-

diction. She also reviewed a summary of the girlfriend's daughter's interview.

At the conclusion of the officer's re-direct examination, a juror submitted a question which the trial court asked:

[Question]: During your investigation of sexual abuse, the possibility of false accusations exists. How do you test this possibility during your investigations?

[Investigating Officer]: In the cases that I do, and in this case, you—[the biological daughter's] disclosure was credible. I— one thing that kind of struck me in this case, too, is that girlfriend was very upset when this first came out and did not want to be involved in any—in the investigation. I felt there was no reason for her to make any kind of allegations up.

Same with ex-wife when I contacted her, she was very reluctant to be involved, did not want her daughter—until she talked to her daughter, and her daughter had made a disclosure to her.

All of that compounded, I believe that both victims were very credible.

The trial court then gave the parties a chance to ask additional questions prompted by the juror's question. The following exchange then occurred:

[Prosecutor]: You said that you believed that the victims were credible, based on the way the parents acted.

Do you look at actually what the victims are saying on the tape and the details that they are giving?

[Investigating Officer]: Most definitely, yes.

[Prosecutor]: Did it concern you that [the biological daughter] did not make a disclosure at the first ... interview, but then disclosed at a second, subsequent interview?

[Investigating Officer]: Well, it's always— it was concerning, but in [the biological daughter's] case, it seemed like she needed to do this at her pace and when she was ready to disclose.

. . . .

[Prosecutor]: And do you make an independent judgment, prior to filing a case, whether you think a child was credible?

[Investigating Officer]: On credibility, yes; and if I have issues with the case, going forward with the case.

[Prosecutor]: So have you investigated cases involving children that you did not file with the courts?

[Investigating Officer]: Absolutely, yes.

[Prosecutor]: And in this case, you made an independent determination on credibility?

[Investigating Officer]: Yes.

Defendant did not object to the juror's question or to the further examination by the prosecution and did not ask that the responses be stricken or that a curative instruction be given.

In the prosecution's closing argument, it stated, without objection:

If you look at the big picture, these kids are not making this up, and this case comes down to whether you believe the kids or not. But if you believe them, you believe them beyond a reasonable doubt. If you don't believe the kids, if you think those children are lying, you need to find him not guilty. But if you do believe these kids, you need to find him guilty.

■ Because there was no contemporaneous objection, we apply a plain error standard of review. *People v. Miller*, 113 P.3d 743, 749–50 (Colo.2005). "Plain error addresses error that is both 'obvious' and 'substantial.'" *Id.* at 749. We recognize as plain error those errors that "so undermined the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Id.* at 750 (quoting *People v. Sepulveda*, 65 P.3d 1002, 1006 (Colo.2003)).

■ With respect to obviousness, "[p]lain error ... is error that is so clear-cut, so obvious, a competent district judge should be able to avoid it without benefit of objection." *People v. O'Connell*, 134 P.3d 460, 464 (Colo. App.2005) (citing *United States v. Frady*, 456 U.S. 152, 163, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982)). The rule that a witness may not express an opinion as to the credibility of

another witness is both clear and long established. *Gaffney*, 769 P.2d at 1088.

■ With respect to substantiality, the error must "so undermine[ ] the fundamental fairness of the trial itself ... as to cast serious doubt on the reliability of the judgment of conviction." *Miller*, 113 P.3d at 750 (quoting *Sepulveda*, 65 P.3d at 1006).

From our review of the investigating officer's testimony, we conclude that its admission was plain error and reversal on all counts is required.

First, the juror's question was clearly asking for the investigating officer's opinion of the children's credibility. Even if it can be argued that the question was not obviously requesting an opinion of the children's credibility, the answer and follow-up questions removed all doubt.

Second, in her response to the juror's question, the investigating officer, not once but several times, expressly stated she thought the victims were credible, or very credible, in making their accusations in this case. This improper expression of opinion was aggravated when the prosecution extensively delved into the basis of her opinion and her independent decision to go forward with a case. And, last but not least, the question was asked by a juror and was obviously predicated on a concern of that juror as to the nature of the evidence and his or her resolution of the central issue of credibility in the case.

Therefore, we cannot say that the question and the investigating officer's answer did not so undermine the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction. We recognize that our conclusion on substantiality is a judgment call based on a thorough review of the record. We also recognize that the authority in this area turns to a considerable extent on both the strength and breadth of the properly admitted evidence, the extent and significance of the improper evidence or testimony, and the reliance, if any, of the prosecution in closing arguments on the improper evidence. Therefore, we review cases in which appellate courts have been called upon to exercise this judgment.

In *People v. Snook*, 745 P.2d 647 (Colo. 1987), the defendant was charged with sexual assault on a child. The child testified that the defendant entered the bedroom where she was sleeping and touched her breasts and genitalia. The defendant denied he improperly touched the child but testified, with support from his wife, that he merely moved the child to separate children sharing the same bed. A social worker was permitted to testify that children tend not to fabricate stories of sexual abuse because, in part, there is no basis for the experience unless it happened to them. There, the standard of review was harmless error which is similar, but not the same as, plain error. Our supreme court stated:

Harmless error is any error which does not substantially influence the verdict or affect the fairness of the proceedings.

The credibility of [the child] was the focal issue in the case. Because the expert's testimony directly supported [the child's] credibility, it may have been the deciding factor in the jury's decision that [the child's] version was correct. In our view, the error was not harmless.

*Id.* at 649 (citations omitted).

Also, in *People v. Koon*, 724 P.2d 1367 (Colo.App.1986), reviewed on the plain error standard, the defendant was charged with two sexual assaults on his stepdaughter based solely on the testimony of the child with support from the mother of the child's girlfriend, a police psychologist, a social worker, and a therapist. The therapist testified on direct examination: "I think it happened and she knows it happened and that is what mattered." *Id.* at 1371.

A division of this court stated:

No definition of plain error will fit every case. However, plain error may be found where an "obvious and substantial," or "grave," error occurs which seriously affects the substantial rights of the accused. A showing of plain error requires that defendant "demonstrate not only that the record reveals that [the error] affected a substantial right but that also the record reveals a reasonable possibility that the error contributed to his conviction."

Here, there was no physical evidence of, or third-party eyewitness testimony to, the alleged sexual assaults. Hence, credibility was the central issue to be resolved by the jury in determining whether the sexual assaults occurred. The therapist's testimony was directed at this core issue. Further, the therapist was the last witness to testify at trial and the timing of this testimony undoubtedly increased its impact on the jury. Moreover, the testimony was aimed at rehabilitating the stepdaughter's credibility, and the therapist's status as an expert witness augmented her testimony with an aura of trustworthiness and reliability. Finally, the evidence of guilt produced in this case is not overwhelming as it was in *Tevlin v. People,* [715 P.2d 338 (Colo.1986) ]. Under these circumstances, we conclude that the two statements, taken together, substantially and seriously affected the defendant's right to a fair trial and there exists a reasonable possibility that the error contributed to his conviction. The judgment of conviction must, therefore, be reversed.

*Id.* at 1371 (additional citations omitted).

By contrast, in *Tevlin,* 715 P.2d 338, the defendant was charged with child abuse and sexual assault on his son. A social worker was permitted to express an opinion on the truthfulness of the child based on his interviews with the child, his stepbrother, and the foster parents. Using the harmless error standard of review, our supreme court affirmed the conviction, stating that there was independent, overwhelming evidence of the defendant's guilt. *Id.* at 342.

In *People v. Eppens,* 979 P.2d 14 (Colo. 1999), the defendant was charged with sexual assault on a child, and a social worker was permitted to testify that the victim was sincere. The court held that the error was not substantial, and therefore not plain error, because the victim testified first and was extensively cross-examined, the social worker was not qualified as an expert and did not express any special skill in determining sincerity, and there was medical corroboration of vaginal and rectal penetration.

Finally, in *Gaffney,* 769 P.2d at 1088–89, our supreme court held that the error in

permitting a physician to testify that "[t]his history is very believable" was harmless. There, the phrase was part of a lengthy direct examination of the physician; the physician testified that the child's history and symptomatology were consistent with having been sexually assaulted on the date at issue and that the physical injuries suffered by the child were consistent with sexual assault; and the trial court had cautioned the jury that it was its prerogative to determine the credibility of the child.

As we previously indicated, whether the error is substantial, and therefore plain, is ultimately a matter of appellate judgment for which there is some, but by no means complete, guidance. Certainly, from these cases the major factor is the quantum and quality of other and independent corroborating evidence of guilt. Here, there is no such evidence in the record.

In addition, reversal of all counts is required because all of the counts are exclusively predicated on the testimony of the victims or their statements to third parties, and the officer's credibility testimony goes to all counts.

Because defendant's claims of prosecutorial misconduct during closing argument and errors in the mittimus are unlikely to arise on retrial, we need not address them here. However, we address other issues that may reoccur.

## II. Section 13–25–129, C.R.S.2008

■ Defendant argues that the trial court erred by admitting out-of-court statements under section 13–25–129, C.R.S.2008. We disagree.

The statute provides, in pertinent part:

(1) An out-of-court statement made by a child ... describing any act of sexual contact, intrusion, or penetration ... performed with, by, on, or in the presence of the child declarant, not otherwise admissible by a statute or court rule which provides an exception to the objection of hearsay, is admissible in evidence in any criminal, delinquency, or civil proceedings in which a child is a victim of an unlawful sexual offense ... when the victim was

less than fifteen years of age at the time of the commission of the offense ... if: (a) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(b) The child ... either:

(I) Testifies at the proceedings....

Here, several witnesses testified as to what the victims stated to them concerning the sexual behavior. Specifically, defendant contends that the statements do not all fit under the exception to the hearsay rule because there was not any physical contact alleged as required by the statute.

■ While defendant raised objections to many of the hearsay statements, he did not object on the ground that the statements were outside the scope of evidence admissible under the statute. *People v. Whitman*, —— P.3d ——, ——, 2007 WL 4198391 (Colo.App. 2007). "Issues not raised before the trial court are reviewed for plain error"; and, therefore, as previously discussed, the record must show the alleged error was obvious and "so undermined the basic fairness of the trial as to cast serious doubt on the reliability of the conviction." *Id.* (citing *People v. Lanari*, 926 P.2d 116, 119–20 (Colo.App.1996)).

Sexual contact is defined, as relevant here, as "the knowing touching of the victim's intimate parts by the actor, or of the actor's intimate parts by the victim." § 18–3–401(4), C.R.S.2008.

Defendant is correct in his assertions that it was not alleged that he touched the girlfriend's daughter. The touching was alleged by defendant's daughter. There was, however, testimony by both victims that he made them touch themselves and that he threatened them if they did not comply.

Several California cases have addressed the concept of "constructive touching" or "innocent agent." Specifically, in *People v. Meacham*, 152 Cal.App.3d 142, 153, 199 Cal. Rptr. 586, 593 (1984), *abrogated on other grounds by People v. Brown*, 8 Cal.4th 746, 35 Cal.Rptr.2d 407, 883 P.2d 949 (1994), the appellate court held that "the children's touching of their own genitalia at the insti-

gation of [the defendant] was a 'constructive touching' by [the defendant] himself." *See also People v. Mickle*, 54 Cal.3d 140, 284 Cal.Rptr. 511, 814 P.2d 290, 308–09 (1991); *People v. Austin*, 111 Cal.App.3d 110, 115, 168 Cal.Rptr. 401, 404 (1980) ("Three persons who each have requisite specific ... intent may create independently the same significant harm to children. The first person himself could perform the lewd touching of a child. The second person could cause an innocent third person to do the same type of touching, and the third person could cause the child to do the same type of touching upon or with itself.").

A division of this court reached a similar conclusion in *People v. Vinson*, 42 P.3d 86, 87–88 (Colo.App.2002), in which it stated that the defendant's seminal fluid landing on the victim was sufficient to constitute touching even though there was not any person-to-person contact. Similarly, in *People v. Moore*, 877 P.2d 840, 846–48 (Colo.1994), the defendant was convicted, under a complicity theory, of sexual assault on a child even though he did not physically touch the child, but instead forced his wife to complete the act.

Here, we conclude there is evidence which, if believed, shows that defendant intimidated the victims into undressing and touching themselves for his own sexual gratification, and, therefore, there was no error, much less plain error, in permitting the testimony under section 13–25–129.

### III. Other Acts Evidence

■ Defendant argues that the trial court erred in admitting certain "other acts" evidence without limiting use of that evidence pursuant to section 16–10–301(4)(d), C.R.S. 2008. Specifically, he contends that evidence of conduct and possession of pornography occurring after the dates charged should have been accompanied by a limiting instruction. We disagree.

At the time of trial in this matter, there was a child pornography case pending against defendant in an adjacent county based on images recovered from his computers.

■ Because there was no request for a limiting instruction, our review is for plain error. Plain error means error both obvious and substantial, which seriously affects substantial rights of the accused. *People v. Roberts,* 738 P.2d 380, 382 (Colo.App.1986). Defendant's failure to request or offer a limiting instruction does not, then, place that duty on the trial court to give one sua sponte. *People v. Scheidt,* 182 Colo. 374, 382, 513 P.2d 446, 451 (1973).

Section 16–10–301(3), C.R.S.2008, states that other act evidence can be introduced to show common plan, scheme, design, or modus operandi, which is what the prosecution argued before the trial court and also argues here. However, "[t]he trial court shall, at the time of the reception into evidence of other acts and again in the general charge to the jury, direct the jury as to the limited purpose or purposes for which the evidence is admitted and for which the jury may consider it." § 16–10–301(4)(d). Subsection (5) states that the "procedural requirements of this section shall not apply when the other acts are presented to prove that the offense was committed as part of a pattern of sexual abuse . . . ." § 16–10–301(5), C.R.S.2008.

As to the child pornography, a limiting instruction was not required because the evidence went to the pattern of abuse charge, which is clearly an exception to the requirement for a limiting instruction. Thus it was not error, much less plain error, for the trial court to omit a limiting instruction.

## IV. Sufficient Evidence

■ Defendant contends that counts fourteen and fifteen must be vacated and dismissed due to insufficiency of the evidence that he was in knowing possession of sexually exploitative material. § 18–6–403(3)(b.5), (c), C.R.S.2008. While we have already concluded that these convictions must be reversed, we disagree that they must be dismissed for insufficiency of the evidence.

■ We review the trial court's ruling de novo. *Dempsey v. People,* 117 P.3d 800, 807 (Colo.2005).

When the sufficiency of the evidence is challenged on appeal, the reviewing court must determine whether any rational trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. McIntier,* 134 P.3d 467, 471 (Colo. App.2005) (citing *People v. Sprouse,* 983 P.2d 771, 777 (Colo.1999); *Kogan v. People,* 756 P.2d 945, 950 (Colo.1988)). The prosecution is given the benefit of every reasonable inference that could be drawn from the evidence. *Id.* Credibility determinations, as well as the weight to be given to the evidence, lie with the fact finder. *Id.* Also, the fact finder must resolve issues of inconsistency as to testimony and other evidence. *Id.* An appellate court cannot sit as a thirteenth juror and set aside a verdict simply because it could have reached a different conclusion. *Id.* at 471–72.

Section 18–6–403(3) states that "[a] person commits sexual exploitation of a child if, for any purpose, he or she knowingly":

(b.5) Possesses or controls any sexually exploitative material for any purpose; except that this paragraph (b.5) does not apply to peace officers or court personnel in the performance of their official duties, nor does it apply to physicians, psychologists, therapists, or social workers, so long as such persons are licensed in the state of Colorado and the persons possess such materials in the course of a bona fide treatment or evaluation program at the treatment or evaluation site; or

(c) Possesses with the intent to deal in, sell, or distribute, including but not limited to distributing through digital or electronic means, any sexually exploitative material.

"Knowingly" requires the defendant be aware that his or her conduct is practically certain to cause the result. § 18–1–501(6), C.R.S.2008.

Here, there is evidence that defendant had access to the computers that contained the child pornography; one computer was seized from defendant; there was a file sharing program on one computer that contained defendant's profile; that file contained at least five child pornography videos; defendant's profile was used to visit websites that contained images of child pornography; and

both victims testified that they had seen defendant viewing child pornography on the computer. We conclude that while they must be reversed on other grounds, there was sufficient evidence for the conviction on counts fourteen and fifteen.

## V. Merger

Defendant argues that count twelve should merge into either count one, two, or three; he also argues that count fifteen should merge into count fourteen. We disagree.

■■ A court is prohibited from imposing multiple punishments for a greater and a lesser included offense by the Double Jeopardy Clauses of the federal and state constitutions and by the judicially-created rule of merger. *People v. Dotson,* 55 P.3d 175, 181 (Colo.App.2002) (citing *Armintrout v. People,* 864 P.2d 576, 578–79 (Colo.1993)). The Double Jeopardy Clauses protect an accused against being twice placed in jeopardy for the same crime. U.S. Const. Amend. V; Colo. Const., art. II, § 18; *Woellhaf v. People,* 105 P.3d 209, 214 (Colo.2005).

■ "A defendant may be convicted of more than one offense arising out of a single incident if he or she has violated more than one statute. However, in the absence of legislative authorization, a defendant may not be convicted of more than one offense if one offense is a lesser included offense of the other." *People v. Marquez,* 107 P.3d 993, 998 (Colo.App.2004). A lesser included offense is "established by proof of the same or less than all the facts required to establish the commission of the offense charged." § 18–1–408(5)(a), C.R.S.2008. To determine whether one offense is a lesser included of another, a comparison of the statutes that define each crime must be made. *People v. Hood,* 878 P.2d 89, 95 (Colo.App.1994). The doctrine of merger only applies when a defendant is convicted of two offenses, one of which is included within the other. *Boulies v. People,* 770 P.2d 1274, 1282 (Colo.1989).

■ Counts one through three and count twelve are based on two separate subsections of section 18–6–403(3). Counts one through three, based on subsection (a), deal with the enticement of the child by the adult. Count twelve, based on subsection (b), deals with the dissemination of the material. Each requires the same culpable mental state, "knowingly," but they prohibit different conduct. Therefore, one is not the lesser included offense of the other, and merger is not appropriate.

■ Counts fourteen and fifteen are also based on two separate subsections of the same section 18–6–403(3). Count fourteen, based on subsection (c), deals with possession with intent to distribute child pornography. Count fifteen, based on subsection (b.5), deals with having child pornography generally. Although the culpable mental state is the same, the acts are different; therefore, if defendant is again convicted of these two counts on retrial, the convictions should not merge.

## VI. Sexually Violent Predator

■ Defendant argues that the trial court erred in finding that the sexually violent predator criteria had been satisfied under section 18–3–414.5, C.R.S.2008. We disagree.

■ When reviewing mixed questions of law and fact, we give deference to the trial court's factual findings, but we subject its conclusions of law to de novo review. *People v. Garcia,* 11 P.3d 449, 453 (Colo.2000).

Section 18–3–414.5(1)(a), C.R.S.2008 defines a sexually violent predator as follows:

"Sexually violent predator" means an offender:

(I) Who is eighteen years of age or older as of the date the offense is committed . . . ;

(II) Who has been convicted . . . of one of the following offenses, or of an attempt, solicitation, or conspiracy to commit one of the following offenses . . . :

(A) Sexual assault . . . or sexual assault in the first degree . . . ;

(B) Sexual assault in the second degree . . . ;

(C) Unlawful sexual contact . . . or sexual assault in the third degree . . . ;

(D) Sexual assault on a child . . . ; or

(E) Sexual assault on a child by one in a position of trust ...;

(III) Whose victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and

(IV) Who, based upon the results of a risk assessment screening instrument ... is likely to subsequently commit one or more of the offenses specified in subparagraph (II) of this paragraph (a) under the circumstances described in subparagraph (III) of this paragraph (a).

This section further requires that, "[b]ased on the results of such assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator." § 18–3–414.5(2), C.R.S.2008.

Here, defendant was over age eighteen when he committed the offenses charged. He was convicted of several offenses which independently satisfy the statute. As to the third criterion—that defendant established or promoted a relationship with the victims for the primary purpose of sexual gratification—as pertinent here, the trial court found:

> [Defendant] did promote these relationships for the purpose of sexual victimization. He had no contact or little contact with these children as children, other than for his own purposes, and [he] has had a risk assessment screening, the results of which indicate he is a sexually violent predator.

Defendant contends that the trial court's findings are insufficient to meet the third criterion. Defendant's risk assessment screening, which was reviewed and taken into consideration by the trial court prior to making its findings, concluded that defendant promoted these relationships for the purpose of sexual gratification described above. Specifically, the screening found:

> The offender took steps to change the focus of the relationship to facilitate the commission of a sexual assault such as but

not limited to planning, increased frequency of contact, introduction of inappropriate sexual contact, stalking, seduction or drugging of the victim; and

The offender engaged in contact with the victim that was progressively more sexually intrusive;

The offender used or engaged in threat, intimidation, force, or coercion in the relationship;

The offender engaged in repetitive nonconsensual sexual contact....

It was shown that defendant did not show much, if any, interest in either victim prior to the beginning of the unlawful sexual behaviors. This evidence was presented through testimony from the victims themselves, the mother of each victim, and other witnesses. This evidence supports the screening and, therefore, the findings and ruling by the trial court. We conclude that the trial court's ruling and findings were sufficient and in compliance with the statute; therefore, we find no error.

The judgment is reversed, and the case is remanded to the trial court for a new trial.

Judge BERNARD and Justice ROVIRA * concur.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2008.