Colorado Court of Appeals Opinions || September 10, 2015


Colorado Court of Appeals -- September 10, 2015
2015 COA 122. No. 12CA0574. People v. Cernazanu.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 122

 
 



 Court of Appeals No. 12CA0574
 Mesa County District Court No. 10CR1413
 Honorable Thomas M. Deister, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 v.

 Travis Michael Cernazanu,

 Defendant-Appellant.


 JUDGMENT REVERSED AND CASE
 REMANDED WITH DIRECTIONS

 Division III
 Opinion by JUDGE DAILEY
 Lichtenstein and Fox, JJ., concur

 Announced September 10, 2015


 Cynthia H. Coffman, Attorney General, Victoria M. Cisneros, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Anne Stockham, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

 
 Â 

 Â¶1Â Â Â Â Â Â Â Â  Defendant, Travis Michael Cernazanu, appeals the judgment of conviction entered on jury verdicts finding him guilty of sexual assault on a child (three counts) and sexual assault on a child (pattern of abuse). We reverse and remand for a new trial.

 I. Background

 Â¶2Â Â Â Â Â Â Â Â  For a number of years, defendant lived, at two different locations, with his female cousin and her young daughter, I.W. I.W. was friends with J.K. and J.K.âs sister. The two sisters would come to I.W.âs house for occasional sleepovers. According to I.W. and J.K., defendant sometimes slept on the floor with them. According to J.K., when she was between the ages of six and eight years old, defendant, on numerous occasions while she was sleeping, would put his hands down her underwear and stick his finger in her vagina.[1]

 Â¶3Â Â Â Â Â Â Â Â  J.K. eventually reported these incidents to her older sister, who confronted defendant and his cousin about them. When defendant and his cousin told J.K.âs mother, C.D., to talk to J.K. and tell her to stop telling lies about defendant, C.D. asked J.K.Â what had happened. J.K. told C.D. about the assaults, which C.D. reported to the police.

 Â¶4Â Â Â Â Â Â Â Â  During the ensuing investigation, I.W. disclosed that, when she was eight years old, defendant slept next to her on the floor one night, pulled down her pajama bottoms, reached under her underwear, and touched her vagina.

 Â¶5Â Â Â Â Â Â Â Â  With respect to J.K., the People charged defendant with two counts of sexual assault on a child and sexual assault on a child â (pattern of abuse). With respect to I.W., the People charged defendant with sexual assault on a child.

 Â¶6Â Â Â Â Â Â Â Â  C.D., twelve-year-old I.W., nine-year-old J.K., and J.K.âs thirteen-year-old sister testified at trial. The prosecutor introduced videotapes of forensic interviews of I.W. and J.K. in which they recounted specific instances of abuse. The detective who conducted those interviews and who had interviewed defendant also testified.

 Â¶7Â Â Â Â Â Â Â Â  Defendant testified that he had never slept with the girls at the first location. He admitted to sleeping next to J.K. ten times at the second house, but said that some of those times he was sleeping in a loveseat or recliner while J.K. was on the floor. He denied having any sexual contact with either of the girls.

 Â¶8Â Â Â Â Â Â Â Â  Defendant also presented testimony from his cousin, who related that she had never seen defendant act inappropriately with the girls, that J.K. had previously lied to her, and that J.K. had told her she made up the allegations against defendant âto fit in with her dadâs girlfriendâs daughters.â

 Â¶9Â Â Â Â Â Â Â Â  The jury convicted defendant as charged, and the trial court sentenced him to an aggregate, indeterminate term of twenty-six years to life in the custody of the Department of Corrections.

 II. J.K.âs Truthfulness

 Â¶10Â Â Â Â Â Â Â Â  Defendant contends that the trial court erred in permitting C.D. to essentially testify that her daughter, J.K., was not lying when J.K. first reported that defendant had sexually assaulted her. We agree.

 Â¶11Â Â Â Â Â Â Â Â  A witness may not opine with respect to whether another person was telling the truth on a specific occasion. CRE 608(a); People v. Wittrein, 221 P.3d 1076, 1081 (Colo. 2009); see People v. Bridges, 2014 COA 65, Â¶11 (The jury is not allowed to consider âevidence that a witness was telling the truth on a specific occasion because it is solely the juryâs responsibility to determine whether a particular witnessâs testimony or statement is truthful.â).Â Consistent with these principles, a witness may not testify that, in reporting a sexual assault, a child was âsincere,â People v. Eppens, 979 P.2d 14, 17 (Colo. 1999), âvery believable,â People v. Gaffney, 769 P.2d 1081, 1088 (Colo. 1989), or ânot . . . coached,â Bridges, Â¶16. Nor may a witness testify that he or she personally believed the childâs statements, People v. Oliver, 745 P.2d 222, 225 (Colo. 1987), or that children tend not to fabricate stories of sexual abuse, People v. Snook, 745 P.2d 647, 649 (Colo. 1987).

 Â¶12Â Â Â Â Â Â Â Â  Thus, âit is clear that [witnesses] may not offer their direct opinion on a child victimâs truthfulness or their opinion on whether children tend to fabricate sexual abuse allegations.â Wittrein, 221 P.3d at 1081.

 Â¶13Â Â Â Â Â Â Â Â  It has, however, been held that an opinion bearing on the credibility of a victim is admissible if that testimony relates to general characteristics only. People v. Marsh, ___ P.3d ___, ___ (Colo. App. No. 08CA1884, Dec. 22, 2011) (cert. granted in part Jan. 22, 2013); see People v. Glasser, 293 P.3d 68, 78 (Colo. App. 2011) (â[E]xperts may testify concerning whether a victimâs behavior or demeanor is consistent with the typical behavior of victims of abuse.â); People v. Whitman, 205 P.3d 371, 383 (Colo. App. 2007)Â (â[T]estimony about childrenâs general characteristics and their behavior is not the same as [impermissible] testimony supporting the veracity of their statements.â); People v. Aldrich, 849 P.2d 821, 829 (Colo. App. 1992) (âBackground data providing a relevant insight into the puzzling aspects of the childâs conduct and demeanor which the jury could not otherwise bring to its evaluation of her credibility is helpful and appropriate in cases of sexual abuse of children . . . .â (quoting State v. Myers, 359 N.W.2d 604, 609 (Minn. 1984))).

 Â¶14Â Â Â Â Â Â Â Â  During a bench conference near the end of his direct examination of C.D., the prosecutor said he wanted to ask her about âwhen [J.K.] lies, what behavior does she exhibit, you know, what kinds of things does she lie about, those types of things.â Defense counsel objected, arguing that the prosecutor was âbasically asking one witness to comment on the veracity of another witness.â The court ruled that, although C.D. could not comment on J.K.âs âtelling the truth,â she could testify as to â[g]eneral character.â

 Â¶15Â Â Â Â Â Â Â Â  The prosecutor then engaged in the following exchange with C.D. about J.K.âs typical behavior when she tells a lie:

 THE PROSECUTOR: Has J.K. ever lied to you before?

 C.D.: Yes.

 THE PROSECUTOR: Okay. When J.K. lies â and has she lied to you in a situation where then you later found out that she lied?

 C.D.: Yes.

 THE PROSECUTOR: Okay. Typically, does she lie about big things or little things?

 C.D.: The only thing sheâs ever lied about is money.

 THE PROSECUTOR: Okay. And when she â when J.K. lies, what is her demeanor?

 C.D.: Sheâs usually really quick on giving an answer. She hasnât told a lie that Iâm aware of, in a while. But in the past when she has told a lie, sheâs usually really quick and within a few minutes, sheâs like, okay, well, yeah, I wasnât being honest. Sheâs very quick at retracting and telling the truth.

 THE PROSECUTOR: Sheâs quick in coming clean?

 C.D.: Yes.

 THE PROSECUTOR: Okay. And thatâs typically whatâs happened in the past when sheâs lied to you about things?

 .D.: Yes.

 THE PROSECUTOR: Okay. You described her demeanor in this particular instance as being withdrawn, very unwilling to talk?

 C.D.: Yes.

 THE PROSECUTOR: Okay. Did she ever retract what she told you?

 C.D.: No, she hasnât.

 Â¶16Â Â Â Â Â Â Â Â  Defendant asserts, and we agree, that this testimony âunmistakably conveyedâ C.D.âs belief that J.K. was telling the truth when she reported the sexual assaults to her mother. Testifying that J.K. did not engage in her typical âlyingâ behavior on that occasion (specifically, not promptly recanting) necessarily implied C.D.âs opinion that J.K. was not lying and, thus, that she was telling the truth on that occasion.

 Â¶17Â Â Â Â Â Â Â Â  The People attempt to salvage the prosecutorâs line of questioning by pointing out that (1) he never explicitly asked C.D. to confirm that she thought J.K. was truthful on that occasion and (2) C.D.âs testimony fell within the line of cases upholding the use of general characteristics as an indirect way of addressing J.K.âs credibility. We are not persuaded.

 Â¶18Â Â Â Â Â Â Â Â  In the first instance, the prosecutor did everything but ask for a direct opinion that J.K. was being truthful when she disclosed the allegations. His questions, and the answers thereto, left no one in doubt that the prosecutor was telegraphing to the jury that C.D. believed J.K. was truthful about what she said on that occasion.

 Â¶19Â Â Â Â Â Â Â Â  C.D. did not need to literally say that she believed J.K. to be ruthful â that was the clear implication of her testimony. See Eppens, 979 P.2d at 17 (witness testified child was âsincereâ); Gaffney, 769 P.2d at 1088 (witness testified child was âvery believableâ); Snook, 745 P.2d at 649 (witness testified that children generally tend not to fabricate stories of sexual assault); Bridges, Â¶13 (witness testified a child was not âcoachedâ).

 Â¶20Â Â Â Â Â Â Â Â  In the second instance, the cases upon which the People rely do not stand for the proposition that testimony of general characteristics of any type is admissible to attack or support a witnessâs credibility. Those cases deal with the admissibility of general characteristics evidence which (1) relates to an issue apart from credibility and (2) only incidentally tends to corroborate a witnessâs testimony. See, e.g., People v. Koon, 724 P.2d 1367, 1369Â­70 (Colo. App. 1986) (Evidence comparing a childâs behavior to theÂ behavioral characteristics of a child incest victim âmay incidentally give rise to an inference that a victim is or is not telling the truth about the specific incident. However, this fact alone is insufficient to deny admission of the evidence, because expert testimony generally tends to bolster or attack the credibility of another witness.â (emphasis added) (citation omitted)).

 Â¶21Â Â Â Â Â Â Â Â  Here, unlike in the cases relied on by the People, the âgeneral haracteristicsâ were not those of a class of victims who had experienced child incest, sex assault, rape trauma, or the like. They were, instead, âcharacteristicsâ peculiar to J.K., which were directly indicative of J.K.âs credibility, and which were relevant only to ascertaining whether J.K. was telling the truth on a specific occasion.

 Â¶22Â Â Â Â Â Â Â Â  For these reasons, we conclude that the evidence elicited by the prosecution in this case was improper. Cf. Sessums v. State, 129 S.W.3d 242, 247-48 (Tex. App. 2004) (several experts testified as to the factors that they use to determine if a child was telling the truth and then further testified either that they believed the child was truthful or that the child had exhibited identifiedÂ characteristics of truthfulness; such testimony was inadmissible as a direct opinion on the truthfulness of the child).

 Â¶23Â Â Â Â Â Â Â Â  In so concluding, we necessarily reject the Peopleâs assertion hat the evidence constituted evidence of truthful character that was admissible to rebut defendantâs attack on J.K.âs character for truthfulness. See CRE 608(a). We reject this assertion because the prosecutor did not seek to elicit opinion or reputation evidence about J.K.âs general character for truthfulness; rather, he elicited, on direct examination of a witness, evidence of J.K.âs specific veracity habit and its application to a specific occasion, i.e., J.K.âs disclosure of the sexual assaults to C.D. This type of evidence is not admissible under CRE 608. See United States v. Rivera, 780 F.3d 1084, 1096 (11th Cir. 2015) (âWhile Rule 608(a) permits a witness to testify as to another witnessâs general character for truthfulness or untruthfulness, the rule does not allow the witness to opine about another witnessâs truthfulness on a particular occasion . . . .â); People v. Koon, 713 P.2d 410, 412 (Colo. App. 1985) (A social workerâs testimony âdid not express an opinion of the âcharacterâ of the [child victim]; rather, it referred to a specificÂ occasion of truthfulness. As such, [it] should not have been admitted.â).

 Â¶24Â Â Â Â Â Â Â Â  The question, then, is whether the erroneous admission of this testimony warrants reversal.

 Â¶25Â Â Â Â Â Â Â Â  Because the error here is nonconstitutional in magnitude, see Bridges, Â¶17, reversal is required only âwhere there is a reasonable probability that [the error] contributed to a defendantâs conviction by substantially influencing the verdict or impairing the fairness of the trial,â People v. Casias, 2012 COA 117, Â¶61.

 Â¶26Â Â Â Â Â Â Â Â  âAs used in this context, âa reasonable probabilityâ does not ean that it is âmore likely than notâ that the error caused the defendantâs conviction. Instead, it means only a probability sufficient to undermine confidence in the outcome of the case . . . . â Id. at Â¶63 (citation omitted).

 Â¶27Â Â Â Â Â Â Â Â  Such a probability exists in this case. There was no physical evidence of, or eyewitness testimony to, the alleged sexual assaults against J.K.[2] Nor did defendant admit to sexually assaulting her. Hence, J.K.âs credibility was the critical issue before the jury inÂ determining whether the sexual assaults had occurred. Under these circumstances, there is a significant likelihood that C.D.âs improper bolstering of J.K.âs credibility substantially influenced the juryâs verdicts. Consequently, the error was not harmless. See Snook, 745 P.2d at 649 (stating that error in admitting expertâs testimony vouching for victimâs credibility was not harmless because victimâs credibility âwas the focal issue in the caseâ); Bridges, Â¶20 (holding that error in admitting vouching testimony not harmless because the victimsâ credibility was the âessential issueâ in the case); People v. Cook, 197 P.3d 269, 274-77 (Colo. App. 2008) (admitting investigating officerâs numerous statements that child victims were believable constituted plain error where there was no corroborating physical evidence or third-party witnesses and credibility was âthe central issue to be resolved by the juryâ (quoting Koon, 724 P.2d at 1371)); cf. Gaffney, 769 P.2d at 1088-89 (holding that doctorâs testimony that history given by child victim referring to defendant as the perpetrator of a sexual crime was âvery believableâ constituted harmless error because the comment was made in passing, and was not âa situation in which the prosecuting attorneyÂ asked the expert witness to offer an opinion on whether a child-victim of a sexual crime was truthful on a particular occasionâ).

 Â¶28Â Â Â Â Â Â Â Â  Our conclusion that the error in admitting the evidence was not harmless extends beyond the counts involving J.K. to the count involving I.W. as well. This follows because J.K.âs allegations constituted powerful corroborating evidence of I.W.âs allegation, where there was little else in the way of corroboration. Consequently, there is also, in our view, a reasonable probability that C.D.âs testimony about J.K.âs truthfulness also substantially influenced the juryâs verdict with regard to the count involving I.W.

 Â¶29Â Â Â Â Â Â Â Â  For these reasons, we conclude that defendantâs convictions must be reversed and that the case must be remanded for a new trial.

 III. Other Issues

 Â¶30Â Â Â Â Â Â Â Â  In his opening brief, defendant raised two other issues: one involving a question from a juror for a witness and one involving the receipt of certain child hearsay evidence (i.e., J.K.âs out-of-court disclosure of the sexual assaults to her mother, C.D.). Only the latter issue is, in our view, likely to recur on retrial. For the benefit of the trial court and the parties, we note, with respect to thatÂ issue, that the trial court did not abuse its discretion in admitting the challenged child hearsay evidence.

 
 The court held the pretrial hearing required by section 13-25-129, C.R.S. 2014.

 
 The court could properly resolve the motion based on an adequate offer of proof, without either J.K. or C.D. testifying at the hearing, see People v. Bowers, 801 P.2d 511, 521-22 (Colo. 1990) (prosecution may proceed via offer of proof); see also People v. Juvenile Court, 937 P.2d 758, 761 (Colo. 1997) (child victim need not testify at hearing); People v. Orozco, 210 P.3d 472, 478 (Colo. App. 2009) (witnesses who heard statements need not testify at hearing).

 
 The prosecutor introduced, as an offer of proof, a police report detailing the circumstances of J.K.âs disclosure of the sexual assaults to C.D.

 
 We agree with the trial courtâs observation that the offer of proof was âactually quite detailed as to whom the statements were made, when they occurred, how it came about, [and] what was said.â

 
 The trial court considered the eight factors relevant for determining the reliability of child hearsay statements, see People v. Dist. Court, 776 P.2d 1083, 1089-90 (Colo. 1989).

 
 The trial court identified six of those factors as being pertinent here, and made findings with respect thereto.

 
 Based on J.K.âs use of age-appropriate language, the lack of leading questions or any motive for J.K. to lie, the consistency in content of J.K.âs statements over time, and her general character trait of quickly recanting lies (which she did not do here), the trial court found that J.K.âs statements bore sufficient indicia of reliability to be admitted at trial.

 
 The courtâs findings are supported by the record, see, e.g., People v. Frost, 5 P.3d 317, 323 (Colo. App. 1999), and the combination of factors relied on are sufficient to support the courtâs decision. See People v. Phillips, 2012 COA 176, Â¶Â¶144-45 (there was no abuse of discretion in finding childâs statements reliable, even though four of the eight reliability factors were not met); People v. Rojas,Â 181 P.3d 1216, 1219-20 (Colo. App. 2008) (holding that childâs statements were sufficiently reliable where they were made in response to nonleading, open-ended questions, in age-appropriate language, with no evidence of bias, and victim âmade substantially similar statements to more than one personâ); People v. Trujillo, 923 P.2d 277, 282 (Colo. App. 1996) (court did not err in childâs statements reliable where they were made in response to open-ended questions and using age-appropriate language).



 IV. Conclusion

 Â¶31Â Â Â Â Â Â Â Â  The judgment of conviction is reversed, and the case is remanded for a new trial.

 JUDGE LICHTENSTEIN and JUDGE FOX concur.


 [1] J.K. also alleged, in a videotaped interview, that this had happened around sixty times overall.

 [2] Indeed, the only evidence corroborating her allegations was (1) I.W.âs description of a similar assault by defendant and (2) defendantâs admission that he occasionally slept next to J.K.Â 




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || September 10, 2015


Back